Carla M. Wirtschafter (SBN 292142)
Email: cwirtschafter@reedsmith.com
REED SMITH LLP
1901 Avenue of the Stars
Suite 700
Los Angeles, CA 90067
Telephone: (213) 734-5200
Facsimile: (213) 734-5299

Attorney for Defendants
Bushnell Holdings, Inc., dba Bushnell
Golf and Vista Outdoor, Inc.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IGOLF, INC., a corporation,<br><br>Plaintiff,<br><br>v.<br><br>BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF; VISTA OUTDOORS, INC.; and DOES 1-25, inclusive,<br><br>Defendants.<br><hr>BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF,<br><br>Counter-Plaintiff<br><br>v.<br><br>IGOLF, INC.<br><br>Counter-Defendant | **Case No.:** 3:23-cv-01595-L-BGS<br><br>**DEFENDANT/COUNTER-PLAINTIFF BUSHNELL HOLDINGS, INC, dba BUSHNELL GOLF'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF/COUNTER-DEFENDANT**<br><br>Removed from the Superior Court of California in and for the County of San Diego, 37-2023-00032117-CU-BC-CTL on August 31, 2023 |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**COMES NOW** Defendant/Counter-Plaintiff BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF ("Bushnell"), for its answer and affirmative defenses to the Complaint of Plaintiff/Counter-Defendant iGolf, Inc. (formerly doing business as L1 Technologies, Inc.) and Counterclaim against Plaintiff/Counter-Defendant iGolf, Inc. ("L1")

## PARTIES

1.  Plaintiff iGolf is a California Corporation with its principal place of business in San Diego California. Plaintiff iGolf originally operated under the name L1 Technologies, Inc. until a name change in or about November 2021.

**ANSWER: On information and belief, admitted.**

2.  Defendant Bushnell is a Delaware Corporation with its principal place of business in Overland Park, Kansas.

**ANSWER: Admitted.**

3.  Defendant Vista is a Delaware Corporation with its principal place of business in Minnesota. Vista is the parent company of Bushnell.

**ANSWER: Admitted.**

4.  Defendants DOES 1 through 25, inclusive, are and at all times herein mentioned were, residing or doing business in the State of California.

**ANSWER: Bushnell lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 4, and this allegation is effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

5.  The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 25, inclusive, are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff will ask leave of court to amend this Complaint to show their true names and capacities when the same have been ascertained. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as DOES 1 through 25, inclusive, are responsible in some

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

manner for the events and happenings referred to herein and negligently, intentionally, or otherwise caused injury and damage proximately thereby to Plaintiff as herein alleged.

**ANSWER: Bushnell lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 5, and this allegation is effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

6. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the Defendants, including the fictitiously named Defendants, were the agents and employees of each of the remaining Defendants and were at all times acting within the purpose and scope of said agency and employment.

**ANSWER: Bushnell denies that Vista and Bushnell were "agents and employees" of each other, or that any actions alleged herein were taken "within the purpose and scope" of that nonexistent "agency and employment." Bushnell lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in Paragraph 6, and these allegations are effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

7. The legal capacities of Defendants are stated on information and belief. Plaintiff will seek leave to amend this Complaint to set forth the capacities of those entities of unknown form when ascertained.

**ANSWER: Bushnell lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 7, and this allegation is effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

## JURISDICTION AND VENUE

8. Venue is proper in the County of San Diego pursuant to Code of Civil Procedure section 395, subdivision (a), because the Defendants' wrongful acts occurred in San Diego County, California.

BUSHNELL'S ANSWER TO PLAINTIFF IGOLF, INC'S COMPLAINT FOR DAMAGES, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

**ANSWER:  The allegations in Paragraph 8 constitute legal conclusions to which no response is required.  To the extent a response is required, Bushnell does not dispute that venue could be proper in San Diego County, California, but Bushnell denies it conducted any wrongful acts in San Diego County, California.**

9.    Bushnell is subject to the jurisdiction of this Court because it conducts substantial business within the State of California, including the sale of its products throughout the state. Bushnell has sufficient contacts with the state and has purposefully availed itself of the benefits of conducting business in California.

**ANSWER: The allegations in Paragraph 9 constitute legal conclusions to which no response is required.  To the extent an answer is required, Bushnell admits only that jurisdiction is proper in the United States District Court for the Southern District of California.**

10.    The amount of controversy exceeds the jurisdictional minimum of this Court

**ANSWER:  Bushnell admits that the amount in controversy exceeds the jurisdictional minimum for purposes of diversity jurisdiction in the United States District Court for the Southern District of California.**

## FACTUAL ALLEGATIONS

11.    iGolf is a business in the golf technology sector which invents, develops, owns, operates and licenses software, hardware and GPS content.

**ANSWER:  Bushnell lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 11, and such allegations are effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

12.    iGolf invented, developed, owns, operates and licenses a golf GPS database of nearly 40,000 golf courses worldwide, which includes Terrain Data and GeoData for fairways, greens (FCB), tee boxes, hazards, water, trees, cart paths, center

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

BUSHNELL'S ANSWER TO PLAINTIFF IGOLF, INC'S COMPLAINT FOR DAMAGES, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

line path to hole, clubhouse structures and other custom point data with two and three

dimensional viewers (collectively "**iGolf GPS Data**").

**ANSWER: Bushnell lacks sufficient knowledge or information to form a belief**
**regarding the truth of the allegations in Paragraph 12, and such allegations are**
**effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

13.    iGolf has designed consumer and commercial golf GPS devices which
function through embedded GPS and Bluetooth connected GPS since 2004. Consumer
golf GPS devices include: watches, handheld devices, lasers, trolleys, launch monitors,
golf car head units, remotes and portable speakers (collectively "**iGolf GPS Devices**").
iGolf develops GPS Devices in a manner which iGolf can make variants of the GPS
Devices and features to provide such GPS Devices to different customers. iGolf retains
ownership of the functionality and intellectual property of the GPS Devices, allowing
customers to claim ownership of the ornamental design.

**ANSWER: Bushnell lacks sufficient knowledge or information to form a belief**
**regarding the truth of the allegations in Paragraph 13, and such allegations are**
**effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

14.    iGolf invents, develops and owns methods of processing and distributing
data to GPS Devices through proprietary iGolf software system ("**iGolf Data**
**Distribution**"). These methods of software distribution include mobile applications,
websites to support and update the iGolf GPS devices, make the iGolf Intellectual
Property available to the GPS devices and make embedded GPS and Bluetooth
connected devices function.

**ANSWER: Bushnell lacks sufficient knowledge or information to form a belief**
**regarding the truth of the allegations in Paragraph 14, and such allegations are**
**effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

15.    Bushnell is a company in the business of selling golf accessory products,
including laser rangefinders and GPS-enabled golf devices and golf speakers. Vista is

the parent company of Bushnell. As such, as used throughout this Complaint, references to Bushnell include and incorporate Vista as Bushnell's parent company.

**ANSWER:** **Bushnell admits only that it is a company and one part of its business is involved in selling golf accessory products, including laser rangefinders and GPS-enabled golf devices and golf speakers. Bushnell admits also that its ultimate parent company is Vista. Bushnell denies that Plaintiff can properly include and incorporate allegations against Bushnell and apply them to Vista, as Bushnell and Vista are separate corporate entities. For these reasons, Bushnell denies that Plaintiff can properly lump allegations both against Bushnell and Vista. Bushnell's responses to the allegations of the complaint are solely with respect to Bushnell and Bushnell directs Plaintiff to the motion to dismiss that is being contemporaneously filed by Vista. Unless expressly admitted herein, Bushnell denies the remaining allegations of Paragraph 15.**

<u>**RELATIONSHIP WITH BUSHNELL**</u>

16. iGolf has been in business with Bushnell since at least approximately 2007.

**ANSWER:** **Bushnell admits that it had a business relationship with L1 Technologies, Inc. ("L1"), iGolf's predecessor, since at least 2007. Unless expressly admitted herein, Bushnell denies the remaining allegations of this Paragraph 16.**

17. On or about December 30, 2011, iGolf and Bushnell entered into a License Agreement ("**2011 Agreement**"), which provided Bushnell a license to utilize iGolf GPS Data, GPS Devices and iGolf Data Distribution (collectively "**iGolf Intellectual Property**"). The 2011 Agreement was effective for twenty-four (24) months, effective beginning January 1, 2012. The 2011 Agreement, among other things, required Bushnell to not disclose confidential information of iGolf; provide iGolf with indemnification for third party claims arising out of Bushnell Products; and provide iGolf with a grant of right of first refusal for a handheld GPS device of any kind.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

BUSHNELL'S ANSWER TO PLAINTIFF IGOLF, INC'S COMPLAINT FOR DAMAGES, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**ANSWER**: Bushnell admits that it and L1 entered into a License Agreement on or about December 30, 2011. Bushnell admits that the License Agreement provided Bushnell with a License to use certain L1 Intellectual Property as defined in the License Agreement. Bushnell admits that the initial term of the License Agreement was for twenty-four (24) months. Bushnell admits that the License Agreement contained confidentiality provisions that applied to both Bushnell and L1, mutual indemnification obligations, and a right of first refusal for certain products as set forth in the License Agreement. Bushnell denies any allegations of Paragraph 17 that are inconsistent with the terms of the License Agreement. Answering further, Bushnell states that it and L1 were parties to a Technology Development and License Agreement, dated January 25, 2011 (the "Development Agreement"), that among other terms, defined the parties' relationship in connection with the development of current and future products. Unless expressly admitted herein, Bushnell denies the remaining allegations of Paragraph 17.

18. In or around December 2013, iGolf and Bushnell executed a First Amendment to the 2011 Agreement ("**2013 Amendment**"), which amended the per unit royalty and extended the term to December 31, 2017.

**ANSWER**: Bushnell admits that Bushnell and L1 executed an amendment in December 2013 that amended the royalty amount and extended the term of the License Agreement until December 31, 2017, among other terms, as set forth in the amendment. Unless expressly admitted herein, Bushnell denies the remaining allegations of Paragraph 18.

19. On information and belief, in or around 2017 Bushnell initiated a relationship with a company called GolfLogix – a competitor of iGolf – who provides GPS map data for golfing.

**ANSWER**: Denied.

BUSHNELL'S ANSWER TO PLAINTIFF IGOLF, INC'S COMPLAINT FOR DAMAGES, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

20.     In or around February 2018, iGolf and Bushnell executed an Addendum to the 2011 Agreement ("**2018 Addendum**"), which amended the royalty fees to $100,000 per month for the use of iGolf GPS Data, plus $4 per unit of each Bushnell branded iGolf GPS Devices which use iGolf GPS Data; this 2018 Addendum acted as a renewal and three-year extension of the terms of the 2011 Agreement. The 2018 Addendum extended the term until February 1, 2021.

**ANSWER**: **Bushnell admits that in February 2018, Bushnell and L1 executed an addendum of both the License Agreement and the Development Agreement, that amended the royalty fees, extended the term by three years, and certain other terms. Bushnell admits that L1 paraphrases some of the terms of the addendum in Paragraph 20, but denies that L1 fully set forth all of the terms of the addendum. Bushnell denies any allegations that are inconsistent with the terms of the addendum. Unless expressly admitted herein, Bushnell denies the remaining allegations of Paragraph 20.**

21.     In or around November 2018, Bushnell approached iGolf about a patent application regarding an iGolf GPS Device which utilized magnet technology for mounting the iGolf GPS Device. iGolf declined to assign its iGolf GPS Device for Bushnell to patent the functionality of the magnet technology. However, iGolf agreed to allow Bushnell to apply for an ornamental exterior design patent of the iGolf GPS Device only. iGolf cooperated with Bushnell and allowed Bushnell to include an iGolf employee on the patent application, which was filed on or about December 11, 2018. Ultimately Patent No. US D877,126 was issued on or about March 3, 2020.

**ANSWER**: **With respect to the first sentence in Paragraph 21, Bushnell admits only that it discussed a patent application with iGolf in the latter part of 2018 regarding a Bushnell golf product, and denies the remaining allegations of that sentence as phrased. Bushnell lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in the second sentence of Paragraph**

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

21, and such allegations are effectively denied by operation of Fed. R. Civ. P. 8(b)(5). With respect to the third and fourth sentences, Bushnell admits only that the parties agreed that Bushnell would apply for a design patent application and included Tim Tiel of L1 on the patent application, which was filed on or about December 11, 2018. Bushnell admits the fifth sentence of Paragraph 21. Unless expressly admitted herein, Bushnell denies the remaining allegations of this Paragraph 21.

22. Despite explicitly declining to assign the functionality of the iGolf GPS Device to Bushell for the purpose of obtaining a patent, on or about January 7, 2019, Bushnell filed a patent application for the iGolf GPS Device with the functionality of the magnet technology. Bushnell's patent application included iGolf GPS Devices and iGolf confidential information which Bushnell employees – John DeCastro, Scott O. Nyhart and Ryne Fisher – falsely claimed to have invented. Ultimately Patent No. US 2023/0035430 was issued on or about February 2, 2023.

**ANSWER:** **Bushnell denies the first sentence of Paragraph 22 as phrased and admits only that Bushnell filed a patent application for a Bushnell Golf product on or about January 7, 2019. Bushnell denies the second sentence of this Paragraph 22 and states that Tim Tiel, of L1, was also listed as an inventor on this patent. With respect to any additional allegations about inventors, Bushnell lacks sufficient knowledge or information to form a belief as to the truth of the allegation regarding inventorship, and those allegations are effectively denied by operation of Fed. R. Civ. P. 8(b)(5). Unless expressly admitted herein, Bushnell denies the remaining allegations of this Paragraph 22.**

23. On information and belief, and unbeknownst to iGolf at the time and despite iGolf inventing the iGolf GPS Device named 'Bushnell Wingman' which operated on iGolf Data Distribution and iGolf GPS Data, Bushnell filed a patent application for the Bushnell Wingman without notice to iGolf or any of the inventors

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

of the Bushnell Wingman on or about July 22, 2020. Bushnell falsely listed John DeCastro, Scott O. Nyhart and William Flood as the inventors. John DeCastro of Bushnell and Vista and Vishak Sankaran of Bushnell and Vista have each stated that Brian Verdugo of iGolf was the inventor of the Bushnell Wingman and all Bushnell branded golf GPS products and how they all functioned – with iGolf Intellectual Property. Bushnell publicly published the patent application for the misappropriated iGolf Intellectual Property under patent application (Patent Application Number 16 / 679,633) which ultimately a patent was issued (Patent No. US 11,455,141 B2) and patent application (Patent Application Number 16 / 935,929) which ultimately a patent was issued (Patent No. US 11,665,477 B2).

**ANSWER**:  **Bushnell denies the first sentence of this Paragraph 23 as phrased, except that Bushnell admits that it filed a patent application on the Bushnell Wingman in or around July 22, 2020.  Bushnell denies the second sentence of this Paragraph 23, other than admitting that John DeCastro, Scott O. Nyhart and William Flood are listed as inventors.  Bushnell denies the third sentence of this Paragraph 23 as phrased and admits only that pursuant to the applicable agreements, L1 was a development partner and was paid for its services in working with Bushnell to develop certain Bushnell Golf products including the Bushnell Wingman.  Bushnell denies the fourth sentence of this Paragraph 23.  With respect to any additional allegations about inventorship by L1, Bushnell lacks sufficient knowledge or information to form a belief as to the truth of the allegation regarding L1's claimed inventorship, and those allegations are effectively denied by operation of Fed. R. Civ. P. 8(b)(5).  Unless expressly admitted herein, Bushnell denies the remaining allegations of this Paragraph 23.**

24.    On information and belief, and unbeknownst to iGolf at the time, Bushnell hired GolfLogix for mapping sometime in 2020 while still bound by the terms of the 2011 Agreement and 2018 Addendum with iGolf. Bushnell developed new handheld

GPS devices during 2020 with a January 2021 release, while still bound by the terms of the 2011 Agreement and 2018 Addendum with iGolf. Bushnell never provided iGolf a right of first refusal for the new handheld GPS devices, as required by the 2011 Agreement and 2018 Addendum.

**ANSWER**: **Denied.**

25. After the expiration of the 2018 Addendum, between approximately February 1, 2021 and April 2021, Bushnell continued to sell iGolf GPS Devices with iGolf GPS Data and iGolf Data Distribution without a license to do so and without iGolf authorization. iGolf sent multiple stop sale notices to Bushnell, yet Bushnell refused to stop selling. Only when the 2021 Addendum was entered into did Bushnell pay for the sales during this period of time without a license.

**ANSWER**: **Bushnell admits only that L1 sent a couple stop sale notices to Bushnell while Bushnell and L1 were negotiating an addendum to the License Agreement and Development Agreement. Bushnell admits that it fully paid L1 for all Bushnell golf products subject to this addendum. Unless expressly admitted herein, Bushnell denies the remaining allegations of this Paragraph 25.**

26. In or around April 2021, iGolf and Bushnell executed an Addendum to the 2011 Agreement ("**2021 Addendum**") which extended the 2011 Agreement to February 28, 2022. The terms of the 2021 Addendum continued the $100,000 per month for the use of iGolf GPS Data plus $4 per unit payment structure; waived royalties associated with the Bushnell Wingman after expiration of the term; procedures related to Bushnell inventory after expiration of the term; procedures related to the iGolf owned 'Bushnell' mobile application after expiration of the term; and payment of outstanding balances owed by Bushnell to iGolf.

**ANSWER**: **Bushnell admits that Bushnell and L1 entered into an addendum of the License Agreement with an effective date of February 1, 2021. Bushnell admits that L1 paraphrases certain of the terms of the addendum in Paragraph 26, but**

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

denies that L1 fully set forth all the terms of this addendum. Bushnell denies any allegations that are inconsistent with the terms of the addendum. Unless expressly admitted herein, Bushnell denies the remaining allegations of Paragraph 26.

27.     After the expiration of the 2021 Addendum, between approximately March 2022 and October 2022, Bushnell again continued to sell iGolf GPS Devices with iGolf GPS Data and iGolf Data Distribution without a license and without iGolf's authorization – in violation of the 2021 Addendum terms. After the expiration of the term, Bushnell failed to provide iGolf notice of any remaining inventory pursuant to the 2021 Addendum. During this time, Bushnell unilaterally decided to pay iGolf a $4 royalty per product. L1 demanded payment for the monthly royalty of $100,000, which Bushnell refused to pay. Bushnell did not deny the ongoing sales in violation of the 2011 Agreement and 2021 Addendum, Bushnell merely did not want to pay pursuant to the 2021 Addendum.

**ANSWER:**     **Bushnell denies that it sold Bushnell products without L1's authorization between March 2022 and October 2022. Bushnell admits that it did not provide L1 with the remaining inventory at the time. Bushnell states that on December 1, 2021 it elected to extend the 2021 Addendum pursuant to the limited provisions of Section 6.b. and admits that it paid the fees associated with that section. Bushnell admits that after Bushnell learned it had sold additional product and provided notice L1, that L1 demanded payment of the monthly royalty of $100,000 which Bushnell refused to pay based on its invocation of Section 6.b. Bushnell denies that any of these sales were in violation of any applicable agreements. Unless expressly admitted herein, Bushnell denies the remaining allegations of Paragraph 27.**

## X18 ACTION

28.     In or around January 2017, a company by the name of Extreme 18, LLC ("**X18**"), which sold a golf-themed speaker and accessories, approached iGolf about the

possibility of obtaining iGolf GPS Data for an embedded golf GPS speaker. X18 did not share with iGolf, at that time, details of the X18 embedded GPS speaker. iGolf and X18 had not made any agreement at that time to keep any information confidential.

**ANSWER:  Bushnell lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 28, and these allegations are effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

29.    In or around February 2017, Bushnell contacted iGolf because Bushnell wanted to attach an embedded iGolf GPS Device to a portable speaker and use iGolf GPS Data and iGolf Data Distribution.

**ANSWER:  Bushnell admits only that in or around February 2017, as part of Bushnell's product planning, Bushnell contacted L1 about Bushnell's idea to develop a portable GPS speaker for use on the golf course and to inquire if L1 was interested in partnering with Bushnell for this product.  Unless expressly admitted herein, Bushnell denies any remaining allegations of Paragraph 29.**

30.    In or around March 2017, iGolf responded to Bushnell and noted that shortly before Bushnell's call, X18 had reached out about licensing iGolf GPS Data for a portable speaker with a GPS module and embedded memory.

**ANSWER:  Admitted.**

31.    In or around March of 2017, iGolf and X18 entered into a non-disclosure agreement ("**NDA**") in which iGolf and X18 agreed to protect the other's confidential and proprietary information while attempting to negotiate a contract. The NDA only provided for a window of confidentiality for disclosures made within one year – any disclosures made after that point were not subject to the NDA. The NDA also expressly reserved for both iGolf and X18 the right to independently develop products on its own or with other parties, even if the products involved were similar.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

BUSHNELL'S ANSWER TO PLAINTIFF IGOLF, INC'S COMPLAINT FOR DAMAGES, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

**ANSWER:  Bushnell lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 31, and these allegations are effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

32.    In or around April 2017, iGolf suggested that Bushnell contact X18 as a potential partner in the golf GPS speaker space. Meanwhile, X18 decided not to enter into a contract with iGolf and informed iGolf that X18 was going to be licensing maps from Golf Logix – a competitor to iGolf – instead of iGolf for the X18 prototype GPS speaker.

**ANSWER:  Bushnell admits only that L1 suggested X18 as a potential partner for Bushnell's speaker idea. Bushnell lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in Paragraph 32, and these allegations are effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

33.    In or around 2018, iGolf provided certain iGolf GPS Data and iGolf Data Distribution to Bushnell for the purpose of Bushnell using the iGolf GPS Data and iGolf Data Distribution in the X18 embedded GPS golf speaker prototype for the benefit of Bushnell.

**ANSWER:   Bushnell admits only that in 2018, in connection with its stated intention to partner with Bushnell and X18 on Bushnell's GPS speaker, L1 provided X18 with a single golf course file for use in connection with a prototype, after much delay by L1's Brian Verdugo.  Unless expressly admitted herein, Bushnell denies the remaining allegations of this Paragraph 33.**

34.    X18 was unable to produce a functional prototype embedded GPS golf speaker for Bushnell and in or around October 2018, Bushnell approached iGolf and asked to develop a concept for a golf speaker. iGolf provided a proof of concept for a Bluetooth speaker with a remote beacon that could announce distances on a golf course, which ultimately became the Bushnell Wingman. Bushnell decided to continue with X18 developing an embedded GPS speaker while also requesting iGolf to develop the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Bushnell Wingman golf speaker as the products' technology were completely different. Bushnell asked both X18 and iGolf, separately, to continue with their independent development of testable prototype speakers (X18 with the embedded GPS golf speaker and iGolf with the Bushnell Wingman).

**ANSWER:  Bushnell admits that as of October 2018, X18 had been unable to provide a functional prototype.  Bushnell now understands that X18's inability was due, in whole or in part, to L1's actions in attempting to delay X18's progress. Bushnell further admits that in October 2018, L1 provided a proof of concept for a speaker product that would work with Bluetooth but denies that this proof of concept became the Bushnell  Wingman.  Bushnell denies that it engaged L1 to develop a product based on the proof of concept at this time, and states that was at some time in 2019.  Bushnell admits that it continued to also partner with X18 to develop a the GPS speaker and believes L1 was still engaged to provide the course map data.  Unless expressly admitted herein, Bushnell denies the remaining allegations of this Paragraph 34.**

35.    Bushnell continued to negotiate with X18, but as X18 repeatedly failed to produce a functioning prototype, Bushnell ultimately concluded that proceeding with X18 was not financially viable. Bushnell and X18 parted ways in or around September 2019.

**ANSWER:  Bushnell admits that it and X18 agreed to part ways in September 2019, and one of the reasons was an inability of Bushnell and X18 to agree to financial terms, and that Bushnell did not receive a functioning prototype of the GPS speaker that X18 was developing.  Unless expressly admitted herein, Bushnell denies the remaining allegations of this Paragraph 35.**

36.    The Bushnell Wingman made its debut in or around January 2020 and in or around April 2020 began deliveries to customers.

**ANSWER:  Admitted.**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

37.     On approximately August 7, 2020, X18 filed a lawsuit against iGolf and Bushnell alleging a variety of causes of action related to trade secrets, breach of contract, unfair competition, etc., in relation to the Bushnell Wingman speaker ("**X18 Action**"), entitled EXTREME 18, LLC V. L1 TECHNOLOGIES, INC., et al., Case No. 37-2020-00027713-CU-BC-NC. iGolf was never served with the complaint in the X18 Action. iGolf ultimately was served with the First Amended Complaint on or about November 18, 2020. iGolf denied the X18 allegations entirely.

**ANSWER**:  **On information and belief, admitted.**

38.     On approximately March 1, 2021, iGolf sent a tender letter for defense and indemnification to Bushnell, requesting that Bushnell pay for all costs incurred by iGolf in the X18 Action, and to indemnify iGolf for the claims set forth by X18 in the X18 Action.

**ANSWER**:  **Bushnell admits that L1 sent a tender letter seeking indemnification as set forth in this Paragraph 38, but denies that L1 was entitled to any such defense and indemnification from Bushnell.**

39.     On approximately March 29, 2021, Bushnell denied iGolf's tender letter and request for defense and indemnification.

**ANSWER**:  **Admitted.**

40.     During the X18 Action both John DeCastro of Bushnell and Vista and Vishak Sankaran of Bushnell and Vista admitted the purpose of the X18 Action was based upon the Bushnell Wingman existence.

**ANSWER**:  **Denied.**

41.     On approximately June 30, 2023, X18 dismissed iGolf from the X18 Action and stated that "[X18] has no reason to believe that [iGolf] is liable for any of the causes alleged against it in the Action. . . ." iGolf did not pay any settlement amounts to X18.

BUSHNELL'S ANSWER TO PLAINTIFF IGOLF, INC'S COMPLAINT FOR DAMAGES, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1 **ANSWER**: **Bushnell admits that L1 did not pay any settlement amounts to X18.**
2 **Bushnell lacks sufficient knowledge or information to form a belief regarding the**
3 **truth of the allegations in Paragraph 41, and these allegations are effectively**
4 **denied by operation of Fed. R. Civ. P. 8(b)(5).**

5     42.     As a result, iGolf has incurred and continues to incur costs associated with
6 defending against the claims made by X18 in the X18 Action.

7 **ANSWER**: **Denied.**

8 **TAYLOR MADE DEAL**

9     43.     In or around October 2020, iGolf and Taylor Made Golf Company, Inc.,
10 ("**Taylor Made**") began discussions regarding Taylor Made golf Bluetooth speaker,
11 amongst other golf technology products with iGolf.

12 **ANSWER**: **Bushnell lacks sufficient knowledge or information to form a belief**
13 **regarding the truth of the allegations in Paragraph 43, and these allegation are**
14 **effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

15     44.     At all relevant times, Taylor Made had a license agreement with iGolf
16 which allowed Taylor Made to access iGolf GPS Data.

17 **ANSWER**: **Bushnell lacks sufficient knowledge or information to form a belief**
18 **regarding the truth of the allegations in Paragraph 44, and these allegations are**
19 **effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

20     45.     iGolf and Taylor Made intended to enter into an agreement whereby Taylor
21 Made desired to have iGolf design iGolf GPS Devices, initially a golf Bluetooth
22 speaker, which would function by using iGolf Intellectual Property, including iGolf
23 GPS Data and iGolf Data Distribution.

24 **ANSWER**: **Bushnell lacks sufficient knowledge or information to form a belief**
25 **regarding the truth of the allegations in Paragraph 45, and these allegations are**
26 **effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

46.    Beginning in approximately November 2020, iGolf and Taylor Made began exchanging drafts of a Product Development Agreement ("**Taylor Made Agreement**").

**ANSWER:  Bushnell lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 46, and these allegations are effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

47.    iGolf and Taylor Made exchanged numerous drafts of the Taylor Made Agreement in a good-faith effort to agree to its terms. By approximately March 2022, iGolf and Taylor Made had come to an agreement as to the terms of the Taylor Made Agreement; the only outstanding issue related to Taylor Made performing an investigation into patent-related issues.

**ANSWER:  Bushnell lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 47, and these allegations are effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

48.    In or around May 2022, Taylor Made declined to enter into the Taylor Made Agreement. Taylor Made notified an executive of iGolf that Taylor Made was not going to execute the negotiated agreement because of concerns and legal hurdles surrounding the Bushnell patent application (Patent Application Number 16 / 679,633) which ultimately a patent was issued (Patent No. US 11,455,141 B2) and patent application (Patent Application Number 16 / 935,929) which ultimately a patent was issued (Patent No. US 11,665,477 B2).

**ANSWER:  Bushnell lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 48, and these allegations are effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

49.    These legal hurdles surrounding patents arose because Bushnell publicly disclosed iGolf Intellectual Property – iGolf GPS Data, iGolf GPS Devices and iGolf

BUSHNELL'S ANSWER TO PLAINTIFF IGOLF, INC'S COMPLAINT FOR DAMAGES, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Data Distribution – in Bushnell patent applications which falsely claim that iGolf Intellectual Property belongs to Bushnell.

**ANSWER: Denied.**

### FIRST CAUSE OF ACTION

### (For Breach of Contract)

**(Against Defendants BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF, VISTA OUTDOORS, INC., and DOES 1-25, inclusive )**

50.    iGolf re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein, to the extent the allegations are not inconsistent with this cause of action.

**ANSWER:  Bushnell reasserts and incorporates by reference its responses to Paragraphs 1-49 as if fully set forth herein.**

51.    iGolf entered into written and/or implied contract(s) with Bushnell, Vista and/or DOES 1-25, and each of them, herein.

**ANSWER:  Bushnell admits only that it entered into written agreements with L1. Bushnell denies that L1 entered into any contracts with Vista.  Unless expressly admitted herein, Bushnell denies the remaining allegations of this Paragraph 51.**

52.    Specifically, and as detailed above, in or around December 2011, iGolf entered into a written contract with Bushnell, Vista and/or DOES 1-25, and each of them. This contract was extended in 2013 and remained in effect at all times between its commencement and December 31, 2017. In February 2018, iGolf and Bushnell, Vista and/or DOES 1-25, and each of them, extended the contract until February 1, 2021. The contract expired as of February 1, 2021, but was ultimately renewed in April 2021, with the term being extended until February 28, 2022. The contract was not renewed following February 28, 2022.

**ANSWER:  Bushnell admits only that it entered into the Development Agreement, the License Agreement, and the 2013 Amendment, the 2018 Addendum to the**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

**Development Agreement and License Agreement, the 2021 Addendum, and a December 2021 letter extending the License Agreement. Bushnell denies that L1 entered any contracts with Vista. Unless expressly admitted herein, Bushnell denies the remaining allegations of this Paragraph 52.**

53.     At all times that the contract(s) with Bushnell, Vista and/or DOES 1-25, and each of them, were in effect, iGolf fully performed all conditions, covenants, and promises required on its part to be performed in accordance with such written and/or implied contracts, except for those prevented and/or excused by Bushnell, Vista and/or DOES 1-25, and each of them.

**ANSWER:  Denied.**

54.     By entering into such written and/or implied contracts, Bushnell, Vista and/or DOES 1-25, and each of them, agreed to abide by the terms of the same. However, Bushnell, Vista and/or DOES 1-25, and each of them, failed to do so, thereby breaching the written and/or implied contracts entered into with iGolf.

**ANSWER:  Denied.**

55.     Specifically, Bushnell, Vista and/or DOES 1-25, and each of them, claimed ownership of iGolf Intellectual Property in patent applications, in direct violation of several sections of the relevant contract(s). Further, Bushnell, Vista and/or DOES 1-25, and each of them, publicly disclosed iGolf confidential information and proprietary iGolf Intellectual Property in patent applications.

**ANSWER:  Denied.**

56.     Further, Bushnell, Vista and/or DOES 1-25, and each of them, engaged in a working relationship with a competitor of iGolf while under contract with Bushnell, Vista and/or DOES 1¬25, and each of them, and developed products that were contemplated and exclusive to the contract without providing iGolf with a right of first refusal.

**ANSWER:  Denied.**

BUSHNELL'S ANSWER TO PLAINTIFF IGOLF, INC'S COMPLAINT FOR DAMAGES, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

57.     Additionally, Bushnell, Vista and/or DOES 1-25, and each of them, continued to sell iGolf GPS Devices covered by the relevant contract(s) without a license and without iGolf authorization in periods of time where the contract(s) were not in effect, specifically between February 1, 2021 and April 2021, and March 2022 and October 2022. During these periods of unauthorized sales, Bushnell, Vista and/or DOES 1-25, and each of them, failed to provide payment in full to iGolf for Bushnell branded iGolf GPS Devices sold which use iGolf GPS Data pursuant to the contract and for which iGolf was entitled to payment.

**ANSWER: Denied.**

58.     As a direct and proximate result of Bushnell, Vista and DOES 1-25, and each of their breach(es), iGolf has been and continues to suffer harm and/or damages.

**ANSWER: Denied.**

59.     Bushnell, Vista and/or DOES 1-25, and each of their breach(es) of contract(s) were a substantial factor in causing iGolf's harm and/or damages.

**ANSWER: Denied.**

## SECOND CAUSE OF ACTION

### (For Breach of Implied Covenant of Good Faith and Fair Dealing)
### (Against Defendants BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF,
### VISTA OUTDOORS, INC., and DOES 1-25, inclusive )

60.     iGolf re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein, to the extent the allegations are not inconsistent with this cause of action.

**ANSWER:  Bushnell reasserts and incorporates by reference its responses to Paragraphs 1-59 as if fully set forth herein.**

61.     iGolf entered into written and/or implied contract(s) with Bushnell, Vista and/or DOES 1-25, and each of them, herein. Inherent in the written and/or implied

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

contract(s) is an implied promise of good faith and fair dealing, including that Bushnell, Vista and/or DOES 1-25, and each of them, not do anything to unfairly interfere with the right of iGolf to receive the benefits of the contract. Good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another. Generally speaking, it means being faithful to one's duty or obligation.
However, Bushnell, Vista and/or DOES 1-25, and each of them, violated the duty to act fairly and in good faith.

**ANSWER: Bushnell admits only that it entered into certain written agreements with L1. The remaining allegations in Paragraph 61 constitute legal conclusions to which no response is required. To the extent a response is required, Bushnell denies that it violated any duty to act fairly and in good faith. Unless expressly admitted herein, Bushnell denies all remaining allegations in this Paragraph 61.**

62. iGolf performed all of the significant things that the contract required iGolf to do, and/or iGolf was excused from having to do those things required by the contract(s). All conditions required for Bushnell, Vista and/or DOES 1-25, and each of their performance occurred or were excused.

**ANSWER: Denied.**

63. Bushnell, Vista and/or DOES 1-25, and each of them, prevented iGolf from receiving the benefits under the contract(s).

**ANSWER: Denied.**

64. Bushnell, Vista and/or DOES 1-25, and each of them, claimed ownership of iGolf Intellectual Property in patent applications, in direct violation of several sections of the relevant contract(s). Further, Bushnell, Vista and/or DOES 1-25, and each of them, publicly disclosed iGolf confidential information and proprietary iGolf Intellectual Property in patent applications.

**ANSWER: Denied.**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

65.     Bushnell, Vista and/or DOES 1-25, and each of them, engaged in a working relationship with a competitor of iGolf while under contract with iGolf, and developed products that were contemplated and exclusive to the contract without providing iGolf with a right of first refusal.

**ANSWER**:  **Denied.**

66.     On information and belief, Bushnell, Vista and/or DOES 1-25, and each of them, utilized and shared confidential iGolf Intellectual Property without iGolf's permission, and reverse-engineered iGolf Intellectual Property to be incorporated and used in developing products with iGolf's competitor.

**ANSWER**:  **Denied.**

67.     Additionally, Bushnell, Vista and/or DOES 1-25, and each of them, continued to sell iGolf Intellectual Property covered by the relevant contract(s) without a license and without iGolf's authorization in periods of time where the contract(s) were not in effect, specifically between February 1, 2021 and April 2021, and March 2022 and October 2022. During these periods of unauthorized sales, Bushnell, Vista and/or DOES 1-25, and each of them, failed to provide payments to iGolf for products covered by the contract and for which iGolf was entitled to payment.

**ANSWER**:  **Denied.**

68.     By doing so, Bushnell, Vista and/or DOES 1-25, and each of them, did not act fairly or in good faith.

**ANSWER**:  **Denied.**

69.     As a direct and proximate result of Bushnell, Vista and/or DOES 1-25, and each of their conduct, iGolf has been and continues to suffer harm and/or damages.

**ANSWER**:  **Denied.**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## THIRD CAUSE OF ACTION

### (For Misappropriation of Trade Secrets)

**(Against Defendants BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF, VISTA OUTDOORS, INC., and DOES 1-25, inclusive )**

70.     iGolf re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein, to the extent the allegations are not inconsistent with this cause of action.

**ANSWER:  Bushnell reasserts and incorporates by reference its responses to Paragraphs 1-69 as if fully set forth herein.**

71.     Bushnell, Vista and/or DOES 1-25, and each of them, misappropriated a trade secret related to iGolf Intellectual Property.

**ANSWER:  Denied.**

72.     At all times relevant herein, iGolf was the owner of proprietary information related to iGolf GPS Data, iGolf Data Distribution and iGolf GPS Devices.

**ANSWER:  Bushnell lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 72, and these allegations are effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

73.     iGolf Intellectual Property was a trade secret at the time of Bushnell, Vista and/or DOES 1-25, and each of their misappropriation. iGolf Intellectual Property was explicitly listed as confidential pursuant to the contract(s) between iGolf and Bushnell, Vista and/or DOES 1-25, and each of them, and was subject to the confidentiality clause as set forth therein.

**ANSWER:  Denied.**

74.     Despite the confidential and trade secret nature of iGolf Intellectual Property, Bushnell, Vista and/or DOES 1-25, and each of them, improperly used and/or disclosed iGolf Intellectual Property, confidential information and/or trade secrets.

BUSHNELL'S ANSWER TO PLAINTIFF IGOLF, INC'S COMPLAINT FOR DAMAGES,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

iGolf developed the process for how the Bushnell speaker functions and the process which Bushnell claims in its patent application.

**ANSWER: Denied.**

75. Bushnell, Vista and/or DOES 1-25, and each of them, claimed ownership of iGolf Intellectual Property in patent applications, in direct violation of several sections of the relevant contract(s). Further, Bushnell, Vista and/or DOES 1-25, and each of them, publicly disclosed iGolf's confidential information and proprietary iGolf Intellectual Property in patent applications.

**ANSWER: Denied.**

76. Bushnell, Vista and/or DOES 1-25, and each of them, engaged in a working relationship with a competitor of iGolf while under contract with iGolf, and developed products that were contemplated and exclusive to the contract without providing iGolf with a right of first refusal.

**ANSWER: Denied.**

77. On information and belief, Bushnell, Vista and/or DOES 1-25, and each of them, utilized and shared confidential iGolf Intellectual Property without iGolf permission, and reverse-engineered iGolf Intellectual Property to be incorporated and used in developing products with iGolf's competitor.

**ANSWER: Denied.**

78. As a direct and proximate result of Bushnell, Vista and/or DOES 1-25, and each of their misappropriation of trade secrets, iGolf has been and continues to suffer harm and/or damages, and/or Bushnell, Vista and/or DOES 1-25, and each of them, was unjustly enriched.

**ANSWER: Denied.**

79. Bushnell, Vista and/or DOES 1-25, and each of their use and/or disclosure of iGolf Intellectual Property, confidential information and/or trade secrets is a

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

substantial factor in causing iGolf's harm and/or damages, and/or resulted in Bushnell, Vista and/or DOES 1-25, and each of them, becoming unjustly enriched.

**ANSWER:  Denied.**

80.     Bushnell, Vista and/or DOES 1-25, and each of their misappropriation of iGolf's trade secrets was conducted maliciously and in willful disregard of iGolf's rights, thus entitling iGolf to an award of exemplary damages and reasonable attorney's fees and costs pursuant to Civil Code sections 3426.3, subdivision (c) and 3426.4.

**ANSWER:  Denied.**

## FOURTH CAUSE OF ACTION

### (For Intentional Interference with Prospective Economic Relations)

### (Against Defendants BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF, VISTA OUTDOORS, INC., and DOES 1-25, inclusive )

81.     iGolf re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein, to the extent the allegations are not inconsistent with this cause of action.

**ANSWER:  Bushnell reasserts and incorporates by reference its responses to Paragraphs 1-80 as if fully set forth herein.**

82.     Bushnell, Vista and/or DOES 1-25, and each of them, intentionally interfered with an economic relationship between iGolf and Taylor Made, which would have resulted in an economic benefit to iGolf.

**ANSWER:  Denied.**

83.     At all times relevant hereto, iGolf had a prospective business and/or economic relationship with Taylor Made, which would have resulted in an economic benefit to iGolf.

**ANSWER:  Bushnell lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 83, and this allegation is effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

BUSHNELL'S ANSWER TO PLAINTIFF IGOLF, INC'S COMPLAINT FOR DAMAGES, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

84. At all times relevant hereto, iGolf expended considerable time, effort and money developing the business relationship with Taylor Made, which would have likely resulted in an economic benefit to iGolf.

**ANSWER:** **Bushnell lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 84, and these allegations are effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

85. Bushnell, Vista and/or DOES 1-25, and each of them, knew of iGolf's relationship with Taylor Made, and iGolf is informed and believes, and thereon alleges that Bushnell, Vista and/or DOES 1-25, and each of them, intended to disrupt the relationship between iGolf and Taylor Made.

**ANSWER: Denied.**

86. iGolf Intellectual Property was a trade secret and explicitly listed as confidential pursuant to the contract(s) between iGolf and Bushnell, Vista and/or DOES 1-25, and each of them.

**ANSWER: Denied.**

87. Despite the confidential and trade secret nature of iGolf Intellectual Property, Bushnell, Vista and/or DOES 1-25, and each of them, improperly used and/or disclosed iGolf Intellectual Property, confidential information and/or trade secrets.

**ANSWER: Denied.**

88. Bushnell, Vista and/or DOES 1-25, and each of them, claimed ownership of iGolf Intellectual Property in patent applications, in direct violation of several sections of the relevant contract(s). Further, Bushnell, Vista and/or DOES 1-25, and each of them, publicly disclosed iGolf's confidential information and proprietary iGolf Intellectual Property in patent applications.

**ANSWER: Denied.**

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

89.    By engaging in this conduct, Bushnell, Vista and/or DOES 1-25, and each of them, intended to disrupt iGolf's relationship with Taylor Made and/or knew that disruption of the relationship was substantially certain to occur.

**ANSWER:  Denied.**

90.    iGolf's relationship with Taylor Made was disrupted, as Taylor Made declined to move forward with the Taylor Made Deal due to concerns and legal hurdles surrounding patents as a direct and proximate result of Bushnell, Vista and/or DOES 1-25, and each of their interference and/or conduct.

**ANSWER:  Denied.**

91.    iGolf has been and continues to suffer harm and/or damages as a direct result of the loss of this relationship with Taylor Made.

**ANSWER:  Denied.**

92.    Bushnell, Vista and/or DOES 1-25, and each of their interference and/or conduct is and was a substantial factor in causing iGolf's harm and/or damages.

**ANSWER:  Denied.**

93.    Bushnell, Vista and/or DOES 1-25, and each of their actions as described herein were made with the specific intent of disrupting iGolf's relationship with Taylor Made, to obtain business and profits for their own benefit, and were taken maliciously, oppressively, and in conscious disregard for iGolf's rights, entitling iGolf to an award of exemplary damages against Bushnell, Vista and/or DOES 1-25, and each of them, to punish and deter Bushnell, Vista and/or DOES 1-25, and each of them, from engaging in any such future conduct.

**ANSWER:  Denied.**

## **FIFTH CAUSE OF ACTION**

### **(For Negligent Interference with Prospective Economic Relations)**

### **(Against Defendants BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF, VISTA OUTDOORS, INC., and DOES 1-25, inclusive )**

94. iGolf re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein, to the extent the allegations are not inconsistent with this cause of action.

**ANSWER: Bushnell reasserts and incorporates by reference its responses to Paragraphs 1-93 as if fully set forth herein.**

95. Bushnell, Vista and/or DOES 1-25, and each of them, negligently interfered with a relationship between iGolf and Taylor Made, which would have resulted in an economic benefit to iGolf.

**ANSWER: Denied.**

96. At all times relevant hereto, iGolf had a prospective business and/or economic relationship with Taylor Made, which would have resulted in an economic benefit to iGolf.

**ANSWER: Bushnell lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 96, and this allegation is effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

97. At all times relevant hereto, iGolf expended considerable time, effort and money developing the business relationship with Taylor Made, which would have likely resulted in an economic benefit to iGolf.

**ANSWER: Bushnell lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 97, and these allegations are effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

98. Bushnell, Vista and/or DOES 1-25, and each of them, knew or should have known of iGolf's relationship with Taylor Made, and iGolf is informed and believes, and thereon alleges that Bushnell, Vista and/or DOES 1-25, and each of them, knew or should have known that iGolf's relationship with Taylor Made would be disrupted if Bushnell, Vista and/or DOES 1-25, and each of them, failed to act with reasonable care.

**ANSWER: Denied.**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

99.    Bushnell, Vista and/or DOES 1-25, and each of them, failed to act with reasonable care by engaging in wrongful conduct, including, but not limited to, improperly using and/or disclosing iGolf Intellectual Property, confidential information and/or trade secrets.

**ANSWER:  Denied.**

100.    iGolf Intellectual Property was a trade secret and explicitly listed as confidential pursuant to the contract(s) between iGolf and Bushnell, Vista and/or DOES 1-25, and each of them.

**ANSWER:  Denied.**

101.    Despite the confidential and trade secret nature of iGolf Intellectual Property, Bushnell, Vista and/or DOES 1-25, and each of them, improperly used and/or disclosed iGolf Intellectual Property, confidential information and/or trade secrets.

**ANSWER:  Denied.**

102.    Bushnell, Vista and/or DOES 1-25, and each of them, claimed ownership of iGolf Intellectual Property in patent applications, in direct violation of several sections of the relevant contract(s). Further, Bushnell, Vista and/or DOES 1-25, and each of them, publicly disclosed iGolf's confidential information, trade secrets and proprietary Intellectual Property in patent applications.

**ANSWER:  Denied.**

103.    iGolf's relationship with Taylor Made was disrupted, as Taylor Made declined to move forward with the Taylor Made Deal due to concerns and legal hurdles surrounding patents as a direct and proximate result of Bushnell, Vista and/or DOES 1-25, and each of their negligent and/or wrongful conduct that resulted in the interference.

**ANSWER:  Denied.**

104.    iGolf has been and continues to suffer harm and/or damages as a direct result of the loss of this relationship with Taylor Made.

**ANSWER:  Denied.**

1     105. Bushnell, Vista and/or DOES 1-25, and each of their interference and/or
2 negligent and/or wrongful conduct is and was a substantial factor in causing iGolf's
3 harm and/or damages.

4 **ANSWER: Denied.**

## SIXTH CAUSE OF ACTION

**(For Unfair Competition in Violation of Business and Professions Code § 17200, et. seq.)**

**(Against Defendants BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF, VISTA OUTDOORS, INC., and DOES 1-25, inclusive )**

10     106. iGolf re-alleges and incorporates herein by reference each and every
11 allegation contained in the preceding paragraphs of this Complaint as though fully set
12 forth herein, to the extent the allegations are not inconsistent with this cause of action.

13 **ANSWER: Bushnell reasserts and incorporates by reference its responses to**
14 **Paragraphs 1-105 as if fully set forth herein.**

15     107. In the alternative, and to the extent that there is a determination that there
16 is no protectable trade secret, iGolf is informed and believed and thereon alleges that
17 Bushnell, Vista and/or DOES 1-25, and each of them, violated Business and Professions
18 Code section 17200, et seq., which prohibits any unlawful, unfair or fraudulent business
19 act or practice ("**Unfair Competition Law**" and/or "**UCL**").

20 **ANSWER: Denied.**

21     108. Bushnell, Vista and/or DOES 1-25, and each of them, violated the UCL by
22 engaging in unlawful, unfair and/or fraudulent business acts and/or practices, as set
23 forth and alleged herein.

24 **ANSWER: Denied.**

25     109. Bushnell, Vista and/or DOES 1-25, and each of them, breached the
26 relevant contract(s) between iGolf and Bushnell, Vista and/or DOES 1-25, and each of
27 them, as set forth and alleged herein.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    **<u>ANSWER</u>:  Denied.**

2        110.   Bushnell, Vista and/or DOES 1-25, and each of them, breached the implied

3    covenant of good faith and fair dealing subject to the relationship between iGolf and

4    Bushnell, Vista and/or DOES 1-25, and each of them, as set forth and alleged herein.

5    **<u>ANSWER</u>:  Denied.**

6        111.   Bushnell, Vista and/or DOES 1-25, and each of them, intentionally and/or

7    negligent interfered with a prospective business and/or economic relationship, as set

8    forth and alleged herein.

9    **<u>ANSWER</u>:  Denied.**

10       112.   iGolf is informed and believes, and thereon alleges that the conduct of

11   Bushnell, Vista and/or DOES 1-25, and each of them, as described herein, constitutes

12   an unfair and/or fraudulent business practices within the meaning of Business and

13   Professions Code section 17200, et seq.

14   **<u>ANSWER</u>:  Denied.**

15       113.   iGolf is further informed and believes, and thereon alleges that Bushnell,

16   Vista and/or DOES 1-25, and each of them, engaged in their unfair and fraudulent

17   business practices, as described herein, with the specific intent to injure and/or cause

18   damage to iGolf.

19   **<u>ANSWER</u>:  Denied.**

20       114.   Bushnell, Vista and/or DOES 1-25, and each of their business acts and

21   practices with respect to iGolf, as set forth herein, are unlawful, unfair and fraudulent

22   in violation of the UCL.

23   **<u>ANSWER</u>:  Denied.**

24       115.   iGolf seeks restitution of any monies received by Bushnell, Vista and/or

25   DOES 1-25, and each of them, and/or disgorgement of profits as a result of their unfair

26   business practices and injunctive relief.

27

28

BUSHNELL'S ANSWER TO PLAINTIFF IGOLF, INC'S COMPLAINT FOR DAMAGES,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

**ANSWER:  Bushnell admits that iGolf seeks the restitution set forth in Paragraph 115, but denies that iGolf is in any way entitled to restitution or other damages of any kind.  Except as expressly admitted, Bushnell denies all remaining allegations in Paragraph 115.**

<u>**SEVENTH CAUSE OF ACTION**</u>

**(For Intentional Misrepresentation)**

**(Against Defendants BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF, VISTA OUTDOORS, INC., and DOES 1-25, inclusive)**

116.  iGolf re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein, to the extent the allegations are not inconsistent with this cause of action.

**ANSWER:  Bushnell reasserts and incorporates by reference its responses to Paragraphs 1-115 as if fully set forth herein.**

117.  Bushnell, Vista and/or DOES 1-25, and each of them, represented facts to iGolf that were not true, as set forth herein, and including, but not limited to, that they would comply with the express terms of the contracts, that they would not share or disclose iGolf's confidential, proprietary information and trade secrets, that they would pay iGolf pursuant to the contracts, that they would provide first right of refusal to iGolf, and that any patents they would apply for would be limited in nature to the terms agreed upon by iGolf.

**ANSWER:  Denied.**

118.  Bushnell, Vista and/or DOES 1-25, and each of them, made these representations intentionally, recklessly, and/or without regard for their truth.

**ANSWER:  Denied.**

119.  Bushnell, Vista and/or DOES 1-25, and each of them, intended that iGolf rely on their representations.

**ANSWER:  Denied.**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

120. iGolf reasonably relied on Bushnell, Vista and/or DOES 1-25, and each of their representations, and shared confidential, proprietary information and trade secrets, entered into contracts, continued to provide goods and services, agreed to a limited ornamental design patent application, and abided by the terms of the contracts.

**ANSWER**: **Denied.**

121. iGolf's reliance on Bushnell, Vista and/or DOES 1-25, and each of their representations was a substantial factor in causing iGolf's harm.

**ANSWER**: **Denied.**

122. Bushnell, Vista and/or DOES 1-25, and each of their wrongful acts, as described and alleged herein, were malicious, oppressive, intended to defraud, and in conscious disregard of iGolf's rights, thus entitling iGolf to punitive damages.

**ANSWER**: **Denied.**

123. As a result, iGolf has been damaged in an amount to be proven at trial.

**ANSWER**: **Denied.**

## EIGHTH CAUSE OF ACTION

### (For Express Indemnity)

**(Against Defendants BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF, VISTA OUTDOORS, INC., and DOES 1-25, inclusive )**

124. iGolf re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein, to the extent the allegations are not inconsistent with this cause of action.

**ANSWER**: **Bushnell reasserts and incorporates by reference its responses to Paragraphs 1-123 as if fully set forth herein.**

125. Bushnell, Vista and/or DOES 1-25, and each of them, entered into written and/or implied contracts with iGolf herein. Express in each contract was a promise on the part of Bushnell, Vista and/or DOES 1-25, and each of them, to indemnify and hold harmless iGolf.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**ANSWER:  Bushnell admits only that Bushnell and L1 entered into certain written contracts that contained mutual indemnification obligations on the part of Bushnell and L1.  Unless expressly admitted herein, Bushnell denies all remaining allegations of Paragraph 125.**

126.  iGolf is informed and believes and thereon alleges that if X18 was damaged, as alleged in the X18 Action, that said damage was directly and proximately caused and contributed to by the negligence and/or faults, or other actionable conduct, of Bushnell, Vista and/or DOES 1-25, and each of them.

**ANSWER:  Denied.**

127.  iGolf is informed and believes and thereon alleges that any and all claims, liabilities, obligations or causes of action set forth in, and arising out of the X18 Action, are within the scope of the express indemnity provisions of the contracts mentioned herein above.

**ANSWER:  Denied.**

128.  On March 1, 2021, iGolf tendered the defense and indemnity of the X18 Action filed against iGolf to Bushnell, Vista and/or DOES 1-25, and each of them.

**ANSWER:  Bushnell admits only that on March 1, 2021, L1 sent a letter to Bushnell demanding indemnification from Bushnell for the X18 litigation.  Unless expressly admitted herein, Bushnell denies all remaining allegations of Paragraph 128.**

129.  On March 29, 2021, Bushnell, Vista and/or DOES 1-25, and each of them, denied iGolf's tender of defense and indemnity in relation to the X18 Action.

**ANSWER:  Bushnell admits only that on March 29, 2021, Bushnell sent an email denying L1's request for indemnification in connection with the X18 litigation.  Unless expressly admitted herein, Bushnell denies all remaining allegations of Paragraph 129.**

BUSHNELL'S ANSWER TO PLAINTIFF IGOLF, INC'S COMPLAINT FOR DAMAGES,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

130.   iGolf has incurred, and continues to incur, attorney's fees and costs in defense of and in relation to the X18 Action.

**ANSWER:  Denied.**

### NINTH CAUSE OF ACTION
### (For Declaratory Relief)
### (Against Defendants BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF, VISTA OUTDOORS, INC., and DOES 1-25, inclusive )

131.   iGolf re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein, to the extent the allegations are not inconsistent with this cause of action.

**ANSWER:  Bushnell reasserts and incorporates by reference its responses to Paragraphs 1-130 as if fully set forth herein.**

132.   In the event that X18 is successful in obtaining a judgment against iGolf, or in the event that iGolf settles with X18, iGolf alleges that any damages suffered by X18 was contributed to by the negligence or fault of Bushnell, Vista and/or DOES 1-25, and each of them, and that Bushnell, Vista and/or DOES 1-25, and each of them, did so negligently perform their duties and functions with respect to the causes of action referenced in X18's complaint, as to proximately cause the damages alleged in X18's complaint, if any.

**ANSWER:  Denied.**

133.   iGolf has been compelled to hire attorneys and incur attorneys' fees, investigative, court and other costs in order to protect itself in the X18 Action, and has therefore been damaged as a result of the breach of Bushnell, Vista and/or DOES 1-25, and each of them, of their respective obligations in an amount presently unascertained, but which consists of attorneys' fees, investigative costs and expenses, and other costs and expenses incurred and to be incurred, and any claims, liabilities or obligations

which iGolf may be compelled to render or respond to as a result of the X18 Action and/or any other complaints herein.

**ANSWER: Denied.**

134. An actual controversy now exists between iGolf and Bushnell, Vista and/or DOES 1-25, and each of them, as to the rights of indemnity owing to iGolf by Bushnell, Vista and/or DOES 1-25, and each of them, in that iGolf contends that indemnity obligations exist which Bushnell, Vista and/or DOES 1-25, and each of them, have failed to acknowledge.

**ANSWER: Bushnell states that the allegations in Paragraph 134 constitute legal conclusions to which no response is required. To the extent a response is required, Bushnell denies that it owes any indemnity obligations to L1.**

135. An actual controversy exists between iGolf and Bushnell, Vista and/or DOES 1-25, and each of them, as follows: iGolf contends that between itself and Bushnell, Vista and/or DOES 1-25, and each of them, iGolf's responsibility, if any, for the damages alleged by X18 rests primarily and ultimately upon Bushnell, Vista and/or DOES 1-25, and each of them,. In the alternative, iGolf contends that the alleged injuries and damages suffered by X18 were contributed to by the negligence, carelessness, or other tortious conduct by Bushnell, Vista and/or DOES 1-25, and each of them.

**ANSWER: Bushnell states that the allegations in Paragraph 135 constitute legal conclusions to which no response is required. To the extent a response is required, Bushnell denies that it owes any indemnity obligations to L1.**

136. iGolf desires a judicial determination of its rights, duties, and obligations with respect to the claims of Bushnell, Vista and/or DOES 1-25, and each of them.

**ANSWER: Bushnell lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 136, and these allegations are effectively denied by operation of Fed. R. Civ. P. 8(b)(5).**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

137.   Such a determination is necessary and proper at this time in order that iGolf may ascertain its rights and duties with respect to the claims of Bushnell, Vista and/or DOES 1-25, and each of them.

**ANSWER:  Denied.**

**PRAYER FOR RELIEF**

**WHEREFORE**, Bushnell denies that iGolf is entitled to any of the relief sought in the "PRAYER FOR RELIEF".

**BUSHNELL'S AFFIRMATIVE DEFENSES**

Without admitting any of the allegations in the Complaint, and without waiving or excusing any of L1's own burdens of proof and production of evidence, Bushnell alleges the following defenses.  Bushnell reserves the right to assert additional defenses that discovery indicates are proper.

1.   Bushnell incorporates by reference its allegations in Paragraphs 1-36 of tis Counterclaim below with respect to each and every affirmative defense, as though fully set forth therein.

**FIRST AFFIRMATIVE DEFENSE**

**(Waiver)**

2.   By its actions, Plaintiff has waived any and all claims, rights, and demands made in the Complaint.

**SECOND AFFIRMATIVE DEFENSE**

**(Laches)**

3.   Plaintiff's claims are barred by the doctrine of laches.

**THIRD AFFIRMATIVE DEFENSE**

**(Estoppel)**

BUSHNELL'S ANSWER TO PLAINTIFF IGOLF, INC'S COMPLAINT FOR DAMAGES, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

4.    Plaintiff's causes of action alleged in the Complaint are barred by the doctrine of estoppel.

## FOURTH AFFIRMATIVE DEFENSE
### (Lack of Causation)

5.    The damages complained of were the result of the intervening actions of others and were not proximately caused by the actions or omissions of Bushnell.

## FIFTH AFFIRMATIVE DEFENSE
### (Justification and Privilege)

6.    Bushnell was justified and privileged in taking the actions alleged in the Complaint.

## SIXTH AFFIRMATIVE DEFENSE
### (Consent/Acquiescence/Ratification)

7.    Plaintiff's claims are barred because Plaintiff acquiesced in and/or consented to any alleged conduct in the Complaint.  By its actions, Plaintiff ratified the actions of others upon which Plaintiff bases its claims.  Thus, to the extent Plaintiff suffered or sustained any loss, injury, damage or detriment, the same was directly and proximately caused and contributed to by Plaintiff's own ratification of the conduct giving rise to her alleged damages and/or Plaintiff's own conduct, acts, omissions, activities, carelessness, recklessness, negligence, and/or intentional misconduct, and not by Bushnell.

## SEVENTH AFFIRMATIVE DEFENSE
### (Good Faith)

8.    Bushnell, at all times, acted in good faith and in accordance with reasonable commercial standards to protect its economic interest, thus precluding any recovery by Plaintiff.

## EIGHTH AFFIRMATIVE DEFENSE
### (Fault of Plaintiff)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

BUSHNELL'S ANSWER TO PLAINTIFF IGOLF, INC'S COMPLAINT FOR DAMAGES, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

9. Plaintiff's own breach, conduct, acts, omissions, activities, carelessness, recklessness, negligence, and/or intentional misconduct directly and proximately caused and contributed to any loss, injury, damage or detriment it sustained.

## NINTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

10. Plaintiff's claims are barred by the doctrine of unclean hands.

## TENTH AFFIRMATIVE DEFENSE

### (No Damages / Speculative Damages)

11. Plaintiff has suffered no actual damages, and any damages claimed in the Complaint are speculative and cannot be recovered from Bushnell.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

12. Plaintiff has failed, refused and/or neglected to take reasonable steps to mitigate its alleged damages, if any, thus barring or diminishing any recovery by Plaintiff.

## TWELFTH AFFIRMATIVE DEFENSE

### (Claim/Issue Preclusion)

13. Plaintiff's claims are barred, in whole or in part, by the doctrines of *res judicata* and collateral estoppel.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Plaintiffs' Prior Breach)

14. Plaintiff materially breached and/or failed to perform the promises and/or conditions, express and/or implied, of any contract between the parties, thereby preventing Bushnell's performance and discharging any obligation on the part of Bushnell.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Barred by Contract)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

15. Some or all of Plaintiff's claims are barred by the applicable provisions of the contracts, policies, and/or agreements at issue.

### FIFTEENTH AFFIRMATIVE DEFENSE
### (Unjust Enrichment)

16. The Complaint and each cause of action therein are barred because recovery for Plaintiff would result in unjust enrichment.

### SIXTEENTH AFFIRMATIVE DEFENSE
### (Negligence)

17. Plaintiff was careless and negligent in and about the matters alleged in the Complaint, which resulted in any damages alleged.
.

### SEVENTEENTH AFFIRMATIVE DEFENSE
### (No Duty)

18. Bushnell alleges it does not owe Plaintiff any duty of care.

### EIGHTEENTH AFFIRMATIVE DEFENSE
### (Setoff)

19. Plaintiff's claims are barred, reduced and/or limited pursuant to applicable statutory and common law regarding limitation awards, caps on recovery and setoffs.

### NINETEENTH AFFIRMATIVE DEFENSE
### (Failure to Plead Fraud with Specificity)

20. Plaintiff fails to plead fraud with specificity as required by law.

### TWENTIETH AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

21. The facts alleged in the Complaint fail to state a claim for each of the causes of action asserted against Bushnell.

### TWENTY-FIRST AFFIRMATIVE DEFENSE
### (Trade Secrets generally known in industry)

22. Plaintiff's claims are barred because any purported trade secrets or confidential information alleged to have been shared with Bushnell was readily ascertainable.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (L1's purported trade secrets are not trade secrets)

23. Plaintiff's trade secret claims fail because any purported trade secrets or confidential information alleged to have been shared with Bushnell do not meet the definition of trade secrets under the California Uniform Trade Secrets Act.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Preemption under the California Uniform Trade Secrets Act)

24. Some or all of Plaintiff's claims are preempted under the California Uniform Trade Secrets Act.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Reservation of Right to Assert Additional Defenses)

25. Bushnell has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses available. Bushnell therefore reserves the right to assert additional affirmative defenses in the event discovery indicates that they may be appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Bushnell prays:

1. That iGolf takes nothing by way of its Complaint;

2. That Bushnell be awarded its costs of suit incurred herein;

3. That Bushnell be awarded its attorney's fees to the extent provided by law;

4. That judgment be entered in favor of Bushnell; and

5. That Bushnell be granted such other relief as the Court deems just and proper

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

# COUNTERCLAIM

Defendant/Counter-Plaintiff Bushnell Holdings, Inc. dba Bushnell Golf ("Bushnell") hereby asserts the following counterclaim against iGolf, Inc., formerly operating as L1 Technologies, Inc., (collectively referred to as "L1") and, in support thereof, alleges as follows:

## PARTIES

1.     Defendant/Counter-Plaintiff Bushnell is a Delaware Corporation with its principal place of business in Overland Park, Kansas.

2.     Plaintiff/Counter-Defendant L1 is a California Corporation with its principal place of business in San Diego California.

## JURISDICTION AND VENUE

3.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and the amount in controversy exceeding $75,000 (exclusive of interest and costs).

4.     Upon information and belief, venue is proper pursuant to 28 U.S.C. § 1391(b)(1) as L1 maintains its principal place of business in San Diego, California.

## FACTUAL BACKGROUND

### *The Parties' Relevant Contractual Agremeents*

5.     On or about January 25, 2011, Bushnell and L1, iGolf's predecessor, entered into a Technology Development and License Agreement (the "Development Agreement"), which documented among other items, the terms on which Bushnell and L1 would develop new products and the use of L1's golf course map data in those products.

6.     Section 8.1 of the Development Agreement provides Bushnell with indemnification rights against L1.

7.     Section 8.1 of the Development Agreement allows for Bushnell to seek and receive indemnification from L1 for all damages, costs, expenses, and Liabilities

(as defined in the Development Agreement) that arise out of, result from, or are incurred in connection with (1) L1's or its employees' or representatives' breach of the Development Agreement, including the breach of representations or warranties in the Development Agreement; (2) any act of gross negligence, willful misconduct, or bad faith by L1 or its agents or representatives; and (3) any and all third party claims arising out of L1's failure to discharge its obligations under the Development Agreement.

8. On or about December 30, 2011, Bushnell and L1 entered into a License Agreement (the "License Agreement"), which exclusively documented among other items, the terms upon which Bushnell would have a license to utilize L1's golf course map data in Bushnell golf products.

9. The License Agreement did not contain or displace any of the development terms of the Development Agreement and exclusively dealt with the licensing of L1's golf course map data.

10. Section 7.1 of the License Agreement provides Bushnell with indemnification rights against L1.

11. Section 7.1 of the License Agreement allows for Bushnell to seek and receive indemnification from L1 for all damages, costs, expenses, and Liabilities (as defined in the License Agreement) that arise out of, result from, or are incurred in connection with (1) L1's or its employees' or representatives' breach of the License Agreement, including the breach of representations or warranties in the License Agreement; (2) any act of gross negligence, willful misconduct, or bad faith by L1 or its agents or representatives; and (3) any and all third party claims arising out of L1's failure to discharge its obligations under the License Agreement.

12. On or about February 28, 2018, both the Development Agreement and License Agreement were amended through an Addendum (the "2018 Addendum"). The 2018 Addendum extended the term of both the Development and License Agreement three years from the effective date of February 1, 2018.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

13.     The 2018 Addendum did not displace the indemnification provisions of the Development Agreement or License Agreement.

***The X18 Litigation***

14.     On information and belief, on August 7, 2020, Extreme 18, LLC ("X18") filed a lawsuit against L1 in the Superior Court of California for the County of San Diego for breach of an NDA, misappropriation of trade secrets, unfair competition, and interference with prospective economic advantage.

15.     On August 28, 2020, X18 filed a complaint against Bushnell in the United States District Court for the District of Delaware.

16.     Following a stipulation by Bushnell and X18, on October 23, 2020, X18 filed its First Amended Complaint against L1 and Bushnell in the Superior Court of California for the County of San Diego, containing claims against Bushnell and L1 for misappropriation of trade secrets, breach of Bushnell and L1's respective NDAs with X18, unfair competition, and a claim solely against L1 for intentional interference with prospective economic advantage.

17.     Both X18 and L1 demurred to X18's First Amended Complaint, which was sustained on April 15, 2021 with leave to amend.

18.     On April 30, 2021, X18 filed its Second Amended Complaint against L1 and Bushnell alleging the same claims against Bushnell and L1, including a claim against L1 for intentional interference with prospective economic advantage, which was based on allegations that L1's owner, Brian Verdugo, engaged in a pattern of conduct intended to disrupt the potential relationship between Bushnell and X18 including making false statements to Bushnell with the specific intent of disrupting X18's relationship with Bushnell

19.     Both Bushnell and L1 demurred to the Second Amended Complaint.

20.     On September 21, 2021, the court sustained Bushnell and L1's demurrers to the SAC to the trade secret, breach of contract and unfair competition claims but

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

overruled L1's demurrer to the claim against L1 for intentional interference with prospective advantage holding that X18's allegations about Brian Verdugo's comments were sufficient to plead a claim.

21.    On October 6, 2021, X18 filed its Third Amended Complaint ("TAC") to which Bushnell answered and L1 demurred.

22.    On June 30, 2022, the court overruled L1's demurrer to all claims against it and as to the intentional interference with prospective economic advantage claim and stated that the allegations of Mr. Verdugo's conduct were sufficient to plead a claim consistent with the Court's prior order.

23.    On July 29, 2022 L1 answered the TAC and filed a general cross-complaint against ROES 1 through 100, for Implied Indemnity, Equitable Indemnity, Express Indemnity, Contribution and Indemnity, and Declaratory Relief.

24.    Subsequently X18, Bushnell, and L1 engaged in discovery, including written discovery and depositions.

25.    During depositions of representative of Bushnell and L1, evidence was adduced that L1 and Brian Verdugo, had taken certain actions that impeded X18's efforts to work with Bushnell as required by L1 pursuant to the applicable agreements with Bushnell, including among other actions, by delaying the transmission of certain map data to L1 in 2018 and making statements to certain executives at Bushnell about X18's capabilities and issues X18 would likely encounter in trying to develop the golf speaker that X18 was working to develop potentially with Bushnell.

26.    Following discovery, Bushnell filed a motion for summary judgment which was set for hearing in the summer of 2023.

27.    While Bushnell's summary judgment motion was pending and including costs and fees, Bushnell and X18 reached an agreement to resolve the matter involving a complete dismissal of all claims in the X18 litigation, including the claims asserted against L1.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

28. On June, 30, 2023, X18's claims against Bushnell and L1 were dismissed with prejudice, and L1's claims against the ROE Defendants, including its claim for express indemnity, were dismissed with prejudice.

29. Following the dismissal, Bushnell demanded indemnification from L1 pursuant to Section 8.1 of the Development Agreement and Section 7.1 of the License Agreement. Specifically, Bushnell advised L1 that L1 was obligated to indemnify Bushnell because the X18 lawsuit arose out of L1's breach of its obligations under the Agreements, and its gross negligence, willful misconduct, and bad faith, for among other reasons, Brian Verdugo's and other L1 representatives actions that inhibited X18's attempt to develop the golf speaker product it was attempting to develop with L1 and Bushnell. Indeed, it was Mr. Verdugo and L1 who first made Bushnell aware of X18, and despite agreeing to provide L1's support through its course mapping technology, engaged in a pattern of conduct aimed at thwarting X18's development efforts.

30. As of the date of this counterclaim, L1 has not accepted Bushnell's request for indemnification.

31. Bushnell incurred substantial costs, including legal fees and payments to resolve the X18 litigation for which L1 is obligated to indemnify Bushnell, including but not limited to paying for L1's share of the settlement payment.

## COUNT I

## (Breach of Contract – Failure to Indemnify as to iGolf, Inc. formerly operating as L1, Inc. ("L1")

32. Bushnell incorporates by reference paragraphs 1-30 of its Counterclaim as if fully set forth herein.

33. Bushnell has complied with its material obligations under both the Development Agreement and License Agreement.

34. Pursuant to the indemnification provisions of the Development Agreement and License Agreement, L1 is obligated to indemnify Bushnell for its costs, including legal fees associated with X18 litigation and the settlement payment made to X18.

35. L1 is in breach of both the Development Agreement and License Agreement by failing to indemnify Bushnell for these costs.

36. Bushnell has suffered damages arising from L1's breach and will continue to incur damages for as long as L1 refuses to indemnify Bushnell.

## **RELIEF REQUESTED**

WHEREFORE, Bushnell prays for the following relief:

1. For dismissal with prejudice of all claims and causes of action asserted by iGolf.

2. For judgment for Bushnell on its Counterclaim, in an amount to be proven at trial, including pre-judgment interest;

3. For an award of Bushnell's costs and attorneys' fees as provided for by contract or allowed by law;

4. For all such other relief as the Court deems just and equitable.

Dated: September 6, 2023                    Respectfully submitted,

REED SMITH LLP

By: /s/ *Carla M. Wirtschafter*
     Carla M. Wirtschafter

*Attorney for Defendants*
*Bushnell Holdings, Inc., dba Bushnell Golf*
*and Vista Outdoor, Inc.*
*E-mail:* cwirtschafter@reedsmith.com

BUSHNELL'S ANSWER TO PLAINTIFF IGOLF, INC'S COMPLAINT FOR DAMAGES, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. I am employed in the office of a member of the bar of this court at whose direction the service was made. My business address is REED SMITH LLP, 1901 Avenue of the Stars, Suite 700, Los Angeles, CA 90067. On September 6, 2023, I served the following document(s) by the method indicated below:

**DEFENDANT/COUNTER-PLAINTIFF BUSHNELL HOLDINGS, INC, dba BUSHNELL GOLF'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF/COUNTER-DEFENDANT**

☒     by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in this Declaration

☒     by transmitting via email to the parties at the email addresses listed below:

Bordin Semmer LLP
Joshua Bordin-Wosk
Justin F. Spearman
Howard Hughes Center
6100 Center Drive, Suite 1100
Los Angeles, CA 90045
Phone: (323) 457-2110
Fax: (323) 457-2120
Email: jbordinwosk@bordinsemmer.com; jspearman@bordinsemmer.com

*Attorneys for Plaintiff IGOLF, INC.*

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on September 6, 2023, at Los Angeles, California.



Aida Turner

BUSHNELL'S ANSWER TO PLAINTIFF IGOLF, INC'S COMPLAINT FOR DAMAGES, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM