1  BORDIN SEMMER LLP
   Joshua Bordin-Wosk, State Bar No. 241077
2  jbordinwosk@bordinsemmer.com
   Andrei V. Serpik, State Bar No. 301260
3  aserpik@bordinsemmer.com
4  Howard Hughes Center
   6100 Center Drive, Suite 1100
5  Los Angeles, CA 90045
   Phone: (323) 457-2110
6  Fax:    (323) 457-2120

7
   Attorneys for Plaintiff,
8  IGOLF, INC.

9           **UNITED STATES DISTRICT COURT**

10      **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

11
   IGOLF, INC., a corporation.,            **No.: 3:23-cv-01595-L-BGS**
12
             Plaintiff,                    **PLAINTIFF IGOLF, INC.'S FIRST**
13                                         **AMENDED COMPLAINT FOR**
                                           **DAMAGES AND DECLARATORY**
14       v.                                **RELIEF:**

15 BUSHNELL HOLDINGS, INC., dba            **(1)   BREACH OF CONTRACT**
   BUSHNELL GOLF; VISTA OUTDOORS,          **(2)   BREACH OF IMPLIED**
16 INC.; and DOES 1-25, inclusive,               **COVENANT OF GOOD FAITH**
                                                 **AND FAIR DEALING**
17          Defendants.                    **(3)   MISAPPROPRIATION OF**
                                                 **TRADE SECRETS**
18                                         **(4)   INTENTIONAL**
                                                 **INTERFERENCE WITH**
19                                               **PROSPECTIVE ECONOMIC**
                                                 **RELATIONS**
20                                         **(5)   NEGLIGENT INTERFERENCE**
                                                 **WITH PROSPECTIVE**
21                                               **ECONOMIC RELATIONS**
22                                         **(6)   UNFAIR COMPETITION IN**
                                                 **VIOLATION OF CALIFORNIA**
23                                               **BUSINESS AND PROFESSIONS**
                                                 **CODE § 17200, *ET. SEQ.***
24                                         **(7)   INTENTIONAL**
                                                 **MISREPRESENTATION**
25                                         **(8)   EXPRESS INDEMNITY**
26                                         **(9)   DECLARATORY RELIEF**
27

28

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**(10)    CORRECTION OF INVENTORSHIP PURSUANT TO 35 USC § 256**

**DEMAND FOR JURY TRIAL**

Date filed: August 30, 2023
Final Pretrial Conference: March 10, 2025

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

PLAINTIFF IGOLF, INC.'S FIRST COMPLAINT FOR DAMAGES

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

     **COMES NOW** Plaintiff IGOLF, INC., ("Plaintiff" or "iGolf") for causes of action against Defendants BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF ("Bushnell"), VISTA OUTDOORS, INC., ("Vista") (collectively, "Defendants"), and DOES 1 through 25, and each of them, and asserts the following allegations with knowledge as to itself and otherwise based on information and belief, and, wherever seemingly inconsistent, pled in the alternative, the following:

<div align="center">

**PARTIES**

</div>

     1.     Plaintiff iGolf is a California Corporation with its principal place of business in San Diego California. Plaintiff iGolf originally operated under the name L1 Technologies, Inc. until a name change in or about November 2021.

     2.     Defendant Bushnell is a Delaware Corporation with its principal place of business in Overland Park, Kansas.

     3.     Defendant Vista is a Delaware Corporation with its principal place of business in Minnesota. Vista is the parent company of Bushnell.

     4.     Defendants DOES 1 through 25, inclusive, are and at all times herein mentioned were, residing or doing business in the State of California.

     5.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 25, inclusive, are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff will ask leave of court to amend this Complaint to show their true names and capacities when the same have been ascertained. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as DOES 1 through 25, inclusive, are responsible in some manner for the events and happenings referred to herein and negligently, intentionally, or otherwise caused injury and damage proximately thereby to Plaintiff as herein alleged.

     6.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the Defendants, including the fictitiously named Defendants, were the agents and employees of each of the remaining Defendants and were at all times acting within the purpose and scope of said agency and employment.

PLAINTIFF IGOLF, INC.'S COMPLAINT FOR DAMAGES

7.    The legal capacities of Defendants are stated on information and belief. Plaintiff will seek leave to amend this Complaint to set forth the capacities of those entities of unknown form when ascertained.

**JURISDICTION AND VENUE**

8.    This Court has subject matter jurisdiction over this dispute:

(a)    pursuant to 28 U.S.C. § 1332 because iGolf is a California corporation with its principal place of business in San Diego, Bushnell is a Delaware corporation with its principal place of business in Kansas and the amount in controversy exceeds $75,000; and

(b)    pursuant to 28 U.S.C. §§ 1331 and 1338(a) because it arises out of the United States patent laws, including 35 U.S.C. § 256.

9.    Bushnell is subject to the jurisdiction of this Court because it conducts substantial business within the State of California, including the sale of its products throughout the state. Bushnell has sufficient contacts with the state and has purposefully availed itself of the benefits of conducting business in California.

10.    Venue is proper in the County of San Diego pursuant to Code of Civil Procedure section 395, subdivision (a), because the Defendants' wrongful acts occurred in San Diego County, California.

11.    The amount of controversy exceeds the jurisdictional minimum of this Court

**FACTUAL ALLEGATIONS**

12.    iGolf is a business in the golf technology sector which invents, develops, owns, operates and licenses software, hardware and GPS content.

13.    iGolf's, Chief Executive Officer Brian Verdugo invented, created, and developed, a golf GPS database of nearly 40,000 golf courses worldwide, which includes Terrain Data and GeoData for fairways, greens (FCB), tee boxes, hazards, water, trees, cart paths, center line path to hole, clubhouse structures and other custom point data with two and three dimensional viewers (collectively "**iGolf GPS Data**").

14.    On behalf of iGolf, Verdugo invented, created, and developed consumer and commercial golf GPS devices, which function through embedded GPS and Bluetooth connected GPS

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

2
PLAINTIFF IGOLF, INC.'S COMPLAINT FOR DAMAGES

since 2004. Consumer golf GPS devices include: watches, handheld devices, lasers, trolleys, launch monitors, golf car head units, remotes and portable speakers (collectively "**iGolf GPS Devices**"). Verdugo developed GPS Devices in a manner which iGolf can make variants of the GPS Devices and features to provide such GPS Devices to different customers. iGolf retains ownership of the functionality and intellectual property of the GPS Devices, allowing customers to claim ownership of the ornamental design.

15.     Verdugo also invented, created, and developeds methods of processing and distributing data to GPS Devices through proprietary iGolf software system ("**iGolf Data Distribution**"). These methods of software distribution include mobile applications, websites to support and update the iGolf GPS devices, make the iGolf Intellectual Property available to the GPS devices and make embedded GPS and Bluetooth connected devices function.

16.     Verdugo assigned his ownership rights to the iGolf GPS Data, the iGolf GPS Devices, and the iGolf Data Distribution (collectively "iGolf Intellectual Property") to iGolf.

## RELATIONSHIP WITH BUSHNELL

17.     Bushnell is a company in the business of selling golf accessory products, including laser rangefinders and GPS-enabled golf devices and golf speakers. Vista is the parent company of Bushnell. As such, as used throughout this Complaint, references to Bushnell include and incorporate Vista as Bushnell's parent company.

18.     iGolf has been in business with Bushnell since at least approximately 2007.

19.     On or about December 30, 2011, iGolf and Bushnell entered into a License Agreement ("2011 Agreement"), which provided Bushnell a license to utilize the iGolf Intellectual Property. The 2011 Agreement was effective for twenty-four (24) months, effective beginning January 1, 2012. The 2011 Agreement, among other things, required Bushnell to not disclose confidential information of iGolf; provide iGolf with indemnification for third party claims arising out of Bushnell Products; and provide iGolf with a grant of right of first refusal for a handheld GPS device of any kind.

20.     In or around December 2013, iGolf and Bushnell executed a First Amendment to the 2011 Agreement ("2013 Amendment"), which amended the per unit royalty and extended the term to December 31, 2017.

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

3

PLAINTIFF IGOLF, INC.'S COMPLAINT FOR DAMAGES

21.    On information and belief, in or around 2017 Bushnell initiated a relationship with a company called GolfLogix – a competitor of iGolf – who provides GPS map data for golfing.

22.    In or around February 2018, iGolf and Bushnell executed an Addendum to the 2011 Agreement ("2018 Addendum"), which amended the royalty fees to $100,000 per month for the use of iGolf GPS Data, plus $4 per unit of each Bushnell branded iGolf GPS Devices which use iGolf GPS Data; this 2018 Addendum acted as a renewal and three-year extension of the terms of the 2011 Agreement. The 2018 Addendum extended the term until February 1, 2021.

23.    In or around November 2018, Bushnell approached iGolf about a patent application regarding an iGolf GPS Device which utilized magnet technology for mounting the iGolf GPS Device. iGolf declined to assign its iGolf GPS Device for Bushnell to patent the functionality of the magnet technology. However, iGolf agreed to allow Bushnell to apply for an ornamental exterior design patent of the iGolf GPS Device only. iGolf cooperated with Bushnell and allowed Bushnell to include an iGolf employee on the patent application, which was filed on or about December 11, 2018. Ultimately Patent No. US D877,126 was issued on or about March 3, 2020.

24.    Despite explicitly declining to assign the functionality of the iGolf GPS Device to Bushell for the purpose of obtaining a patent, on or about January 7, 2019, Bushnell filed US Patent Application No. 16/241,718 (the '718 Application) for the iGolf GPS Device with the functionality of the magnet technology. Bushnell's patent application included iGolf GPS Devices and iGolf confidential information which Bushnell employees – John DeCastro, Scott O. Nyhart and Ryne Fisher – falsely claimed to have invented. Ultimately, the '718 Application was issued on or about February 2, 2023 as US Patent No. 11,474,240 (the '240 Patent).  A subsequent patent application claiming priority to the '718 Application was filed on or about October 13, 2022 as US Patent Application No. 17/965,381 (the '381 Application) and is currently pending before the United States Patent & Trademark Office (USPTO).

25.    On information and belief, and unbeknownst to iGolf at the time and despite iGolf inventing the iGolf GPS Device named 'Bushnell Wingman' which operated on iGolf Data Distribution and iGolf GPS Data, Bushnell filed another patent application for the Bushnell Wingman without notice to iGolf or any of the inventors of the Bushnell Wingman on or about November 11,

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

PLAINTIFF IGOLF, INC.'S COMPLAINT FOR DAMAGES

2019 as US Patent Application No. 16/769,633 (the '633 Application), which issued as US Patent No. 11,455,141 (the '141 Patent). To date, Bushnell has filed at least three other patent applications claiming priority to the '633 Application: US Patent Application No. 16/935,929 (the '929 Application), filed on July 22, 2020, now issued US Patent No. 11,665,477 (the '477 Patent); US Patent Application No. 17/948,696 (the '696 Application); and US Patent Application No. 18/117,207 (the '207 Application). In each of the above four patent filings, Bushnell falsely listed John DeCastro, Scott O. Nyhart and William Flood as the only inventors. John DeCastro of Bushnell and Vista and Vishak Sankaran of Bushnell and Vista have each stated that Brian Verdugo of iGolf was the inventor of the Bushnell Wingman and all Bushnell branded golf GPS products and how they all functioned – with iGolf Intellectual Property.

26.  On information and belief, and unbeknownst to iGolf at the time, Bushnell hired GolfLogix for mapping sometime in 2020 while still bound by the terms of the 2011 Agreement and 2018 Addendum with iGolf. Bushnell developed new handheld GPS devices during 2020 with a January 2021 release, while still bound by the terms of the 2011 Agreement and 2018 Addendum with iGolf. Bushnell never provided iGolf a right of first refusal for the new handheld GPS devices, as required by the 2011 Agreement and 2018 Addendum.

27.  After the expiration of the 2018 Addendum, between approximately February 1, 2021 and April 2021, Bushnell continued to sell iGolf GPS Devices with iGolf GPS Data and iGolf Data Distribution without a license to do so and without iGolf authorization. iGolf sent multiple stop sale notices to Bushnell, yet Bushnell refused to stop selling. Only when the 2021 Addendum was entered into did Bushnell pay for the sales during this period of time without a license.

28.  In or around April 2021, iGolf and Bushnell executed an Addendum to the 2011 Agreement ("2021 Addendum") which extended the 2011 Agreement to February 28, 2022. The terms of the 2021 Addendum continued the $100,000 per month for the use of iGolf GPS Data plus $4 per unit payment structure; waived royalties associated with the Bushnell Wingman after expiration of the term; procedures related to Bushnell inventory after expiration of the term; procedures related to the iGolf owned 'Bushnell' mobile application after expiration of the term; and payment of outstanding balances owed by Bushnell to iGolf.

29.     After the expiration of the 2021 Addendum, between approximately March 2022 and October 2022, Bushnell again continued to sell iGolf GPS Devices with iGolf GPS Data and iGolf Data Distribution without a license and without iGolf's authorization – in violation of the 2021 Addendum terms. After the expiration of the term, Bushnell failed to provide iGolf notice of any remaining inventory pursuant to the 2021 Addendum. During this time, Bushnell unilaterally decided to pay iGolf a $4 royalty per product. L1 demanded payment for the monthly royalty of $100,000, which Bushnell refused to pay. Bushnell did not deny the ongoing sales in violation of the 2011 Agreement and 2021 Addendum, Bushnell merely did not want to pay pursuant to the 2021 Addendum.

## X18 ACTION

30.     In or around January 2017, a company by the name of Extreme 18, LLC ("X18"), which sold a golf-themed speaker and accessories, approached iGolf about the possibility of obtaining iGolf GPS Data for an embedded golf GPS speaker. X18 did not share with iGolf, at that time, details of the X18 embedded GPS speaker. iGolf and X18 had not made any agreement at that time to keep any information confidential.

31.     In or around February 2017, Bushnell contacted iGolf because Bushnell wanted to attach an embedded iGolf GPS Device to a portable speaker and use iGolf GPS Data and iGolf Data Distribution.

32.     In or around March 2017, iGolf responded to Bushnell and noted that shortly before Bushnell's call, X18 had reached out about licensing iGolf GPS Data for a portable speaker with a GPS module and embedded memory.

33.     In or around March of 2017, iGolf and X18 entered into a non-disclosure agreement ("NDA") in which iGolf and X18 agreed to protect the other's confidential and proprietary information while attempting to negotiate a contract. The NDA only provided for a window of confidentiality for disclosures made within one year – any disclosures made after that point were not subject to the NDA. The NDA also expressly reserved for both iGolf and X18 the right to independently develop products on its own or with other parties, even if the products involved were similar.

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

6

PLAINTIFF IGOLF, INC.'S COMPLAINT FOR DAMAGES

34.    In or around April 2017, iGolf suggested that Bushnell contact X18 as a potential partner in the golf GPS speaker space. Meanwhile, X18 decided not to enter into a contract with iGolf and informed iGolf that X18 was going to be licensing maps from Golf Logix – a competitor to iGolf – instead of iGolf for the X18 prototype GPS speaker.

35.    In or around 2018, iGolf provided certain iGolf GPS Data and iGolf Data Distribution to Bushnell for the purpose of Bushnell using the iGolf GPS Data and iGolf Data Distribution in the X18 embedded GPS golf speaker prototype for the benefit of Bushnell.

36.    X18 was unable to produce a functional prototype embedded GPS golf speaker for Bushnell and in or around October 2018, Bushnell approached iGolf and asked to develop a concept for a golf speaker. iGolf provided a proof of concept for a Bluetooth speaker with a remote beacon that could announce distances on a golf course, which ultimately became the Bushnell Wingman. Bushnell decided to continue with X18 developing an embedded GPS speaker while also requesting iGolf to develop the Bushnell Wingman golf speaker as the products' technology were completely different. Bushnell asked both X18 and iGolf, separately, to continue with their independent development of testable prototype speakers (X18 with the embedded GPS golf speaker and iGolf with the Bushnell Wingman).

37.    Bushnell continued to negotiate with X18, but as X18 repeatedly failed to produce a functioning prototype, Bushnell ultimately concluded that proceeding with X18 was not financially viable. Bushnell and X18 parted ways in or around September 2019.

38.    The Bushnell Wingman made its debut in or around January 2020 and in or around April 2020 began deliveries to customers.

39.    On approximately August 7, 2020, X18 filed a lawsuit against iGolf and Bushnell alleging a variety of causes of action related to trade secrets, breach of contract, unfair competition, etc., in relation to the Bushnell Wingman speaker ("X18 Action"), entitled EXTREME 18, LLC V. L1 TECHNOLOGIES, INC., et al., Case No. 37-2020-00027713-CU-BC-NC. iGolf was never served with the complaint in the X18 Action. iGolf ultimately was served with the First Amended Complaint on or about November 18, 2020. iGolf denied the X18 allegations entirely.

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

7

PLAINTIFF IGOLF, INC.'S COMPLAINT FOR DAMAGES

40. On approximately March 1, 2021, iGolf sent a tender letter for defense and indemnification to Bushnell, requesting that Bushnell pay for all costs incurred by iGolf in the X18 Action, and to indemnify iGolf for the claims set forth by X18 in the X18 Action.

41. On approximately March 29, 2021, Bushnell denied iGolf's tender letter and request for defense and indemnification.

42. During the X18 Action both John DeCastro of Bushnell and Vista and Vishak Sankaran of Bushnell and Vista admitted the purpose of the X18 Action was based upon the Bushnell Wingman existence.

43. On approximately June 30, 2023, X18 dismissed iGolf from the X18 Action and stated that "[X18] has no reason to believe that [iGolf] is liable for any of the causes alleged against it in the Action. . . ." iGolf did not pay any settlement amounts to X18.

44. As a result, iGolf has incurred and continues to incur costs associated with defending against the claims made by X18 in the X18 Action.

## TAYLOR MADE DEAL

45. In or around October 2020, iGolf and Taylor Made Golf Company, Inc., ("Taylor Made") began discussions regarding Taylor Made golf Bluetooth speaker, amongst other golf technology products with iGolf.

46. At all relevant times, Taylor Made had a license agreement with iGolf which allowed Taylor Made to access iGolf GPS Data.

47. iGolf and Taylor Made intended to enter into an agreement whereby Taylor Made desired to have iGolf design iGolf GPS Devices, initially a golf Bluetooth speaker, which would function by using iGolf Intellectual Property, including iGolf GPS Data and iGolf Data Distribution.

48. Beginning in approximately November 2020, iGolf and Taylor Made began exchanging drafts of a Product Development Agreement ("Taylor Made Agreement").

49. iGolf and Taylor Made exchanged numerous drafts of the Taylor Made Agreement in a good-faith effort to agree to its terms. By approximately March 2022, iGolf and Taylor Made had come to an agreement as to the terms of the Taylor Made Agreement; the only outstanding issue related to Taylor Made performing an investigation into patent-related issues.

PLAINTIFF IGOLF, INC.'S COMPLAINT FOR DAMAGES

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

50.    In or around May 2022, Taylor Made declined to enter into the Taylor Made Agreement.  Taylor Made notified an executive of iGolf that Taylor Made was not going to execute the negotiated agreement because of concerns and legal hurdles surrounding the various patent applications improperly filed by Bushnell, including the '141 Patent and the '477 Patent.

51.    These legal hurdles surrounding patents arose because Bushnell publicly disclosed iGolf Intellectual Property – iGolf GPS Data, iGolf GPS Devices and iGolf Data Distribution – in Bushnell patent applications which falsely claim that iGolf Intellectual Property belongs to Bushnell.

## BUSHNELL PATENT FILINGS

52.    The iGolf Intellectual Property, which was the subject of the 2011 Agreement, includes proprietary information and know-how created, invented and developed by Brian Verdugo.  As described supra, the iGolf Intellectual Property includes iGolf GPS Data, iGolf GPS Devices and iGolf Data Distribution, as well as the systems and methods comprising how these proprietary platforms may be integrated into physical devices.

53.    The iGolf Intellectual Property now appears in one or more claims of the issued patents improperly procured by Bushnell, since Brian Verdugo contributed to the conception of the invention as claimed and he is not listed as an inventor.

54.    The '240 Patent names John DeCastro, Ryne Fisher, Scott Nyhart and Timothy Tiel as the only inventors.

55.    The '240 Patent does not list Brian Verdugo as a named inventor.

56.    The '240 Patent includes three independent claims that recite one or more elements of the iGolf Intellectual Property.  These independent claims are claims 1, 8 and 16.

57.    Claim 1 of the '240 Patent reads as follows:  1.  A GPS golf rangefinder system comprising a GPS rangefinder device and an accessory clip, the GPS rangefinder device comprising: a polymer housing comprising a front housing portion at a front side and having a generally square profile when viewed from the front and having a display screen bezel, the front housing portion coupled to a rearward housing portion at a rearward side and having a rearward side wall portion with a rearward edge portion extending around a periphery thereof, the rearward housing portion having a generally square profile when viewed from the rear, the front housing portion and rearward

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

PLAINTIFF IGOLF, INC.'S COMPLAINT FOR DAMAGES

housing portion defining an interior, the rearward housing portion having an outward projecting convexity, the convexity having a convexity perimeter extending to the rearward edge portion of rearward side margin and the convexity having a centrally positioned most distal portion; circuitry including a GPS receiver, a processor, memory, connecting to a battery, all positioned in the interior of the housing, and the circuitry further connected to a display screen positioned to be viewable within the bezel and user controls on the housing; and a first magnet positioned in the interior of the housing at the most distal portion of the outwardly projecting convexity; the accessory clip comprising a metal body defining a hook portion and a receptacle portion having a bowl shape, a second magnet fixed in the receptacle portion, the receptacle portion and magnet defining a concavity sized to conformingly receive the convexity whereby the accessory clip is magnetically coupleable to device at the convexity; whereby when the accessory clip is attached to the device, the metal body has a profile when viewed from the rear that is entirely interior to the rearward housing profile.

58.     Claim 8 of the '240 Patent reads as follows:  8.   A GPS golf rangefinder system comprising a GPS rangefinder device and an accessory clip, the GPS rangefinder device comprising: a polymer housing comprising a front housing portion at a front side and having a generally square profile when viewed from the front and having a forward screen receiving region, the front housing portion coupled to a rearward housing portion, the rearward housing portion at a rearward side of the device and having a rearward side wall portion with a rearward edge portion extending around a periphery of the rearward side wall portion, the rearward housing portion having a generally square profile when viewed from the rear, the front housing portion and rearward housing portion defining an interior, the rearward housing portion having an outward projecting convexity, the convexity having a centrally positioned most distal portion having a planar outer surface, the housing sized to fit within a geometric rectilinear shape of 2.5 inches by 2.5 inches by 0.85 inches; circuitry including a GPS receiver, a processor, memory, connecting to a battery, all positioned in the interior of the housing, and the circuitry further connected to a display screen positioned to be viewable within the bezel and user controls on the housing; and a first magnet positioned in the interior of the housing at the most distal portion of the outwardly projecting convexity, the magnet disc shaped with a circular profile concentric with the circular perimeter of the planar outer surface; the accessory clip

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

comprising a body defining a spring hook portion and a receptacle portion having a second magnet fixed therein, the receptacle portion and magnet defining a concavity sized to conformingly receive the convexity whereby the accessory clip is magnetically coupleable to device at the convexity.

59.    Claim 16 of the '240 Patent reads as follows:  16.  A GPS golf rangefinder system comprising a GPS rangefinder device and an accessory, the GPS rangefinder device comprising:  a polymer housing comprising a front housing portion at a front side and the front housing portion having a generally square profile when viewed from the front and having a display screen receiving region, the front housing portion coupled to a rearward housing portion at a rearward side of the device and having a rearward side wall portion with a rearward edge portion extending around a periphery thereof, the rearward housing portion having a generally square profile when viewed from the rear, the front housing portion and rearward housing portion defining an interior, the rearward housing portion having an outward projecting convexity, the convexity having a convexity perimeter extending to the rearward edge portion of rearward side margin, the convexity extending no more than; circuitry including a GPS receiver, a processor, memory, connecting to a battery, all positioned in the interior of the housing, and the circuitry further connected to a display screen positioned to be viewable at the front side of the device and user controls connecting to the circuitry on the device; and a first magnet positioned at a most distal portion of the outwardly projecting convexity; wherein the device weighs less than 4 ounces and occupies a geometric volume of less than 4.75 cubic inches; the accessory having receptacle portion having a bowl shape with a second magnet fixed therein, the receptacle portion defining a concavity conforming to the convexity, whereby the accessory is magnetically coupleable to the device with the convexity and concavity defining an interface between the accessory and the device, the device and the accessory slidingly movable with respect to each other in a rotary direction and a lateral direction a discrete distance of at least 0.1 inches without magnetically decoupling.

60.    All of the remaining claims of the '240 Patent (claims 2-7, 9-15 and 17-20) also recite elements of iGolf Intellectual Property and Brian Verdugo's contributions to the conception of the invention as claimed because these remaining claims depend from (and therefore incorporate all of the limitations of) independent claims 1, 8 or 16.

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

61.     The '141 Patent names John DeCastro, Scott Nyhart and William Flood as the only inventors.

62.     The '141 Patent does not list Brian Verdugo as a named inventor.

63.     The '141 Patent includes one independent claim that recites one or more elements of the iGolf Intellectual Property.  This independent claim is claim 1.

64.     Claim 1 of the '141 Patent reads as follows:  1.  An audio playback system comprising: a beacon configured to trigger a request for shot information; a speaker device configured to removably receive the beacon and play audio content; a controller wirelessly coupled to the beacon and the speaker device, the controller configured to:  transmit the request for shot information to a remote device, wherein the remote device includes a GPS-enabled location service, and the shot information comprises a geographic location of the mobile device correlated with environmental information; receive the shot information from the remote device; convert the shot information into an audio signal; determine whether audio content is playing from the speaker device, and if audio content is playing, adapting the audio content; and play back the audio signal to an audio output coupled to the speaker device.

65.     All of the remaining claims of the '141 Patent (claims 2-17) also recite elements of iGolf Intellectual Property and Brian Verdugo's contributions to the conception of the invention as claimed because these remaining claims depend from (and therefore incorporate all of the limitations of) independent claim 1.

66.     The '477 Patent names John DeCastro, Scott Nyhart and William Flood as the only inventors.

67.     The '477 Patent does not list Brian Verdugo as a named inventor.

68.     The '477 Patent includes two independent claims that recite one or more elements of the iGolf Intellectual Property.  These independent claims are claims 1 and 17.

69.     Claim 1 of the '477 Patent reads as follows:  1.  An audio system comprising: a speaker device; a beacon configured to trigger a request for shot location, wherein the beacon comprises an earpiece, a sensor, and a GPS-enabled location service; a controller wirelessly coupled to the beacon; and a non-transitory, computer-readable storage medium in operable communication with the

PLAINTIFF IGOLF, INC.'S COMPLAINT FOR DAMAGES

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

1  controller, wherein the computer-readable storage medium contains one or more programming

2  instructions that, when executed, cause the controller to:  determine the operational state of the

3  earpiece, based at least in part on sensor information and user input; if the earpiece is in an active

4  state based on sensor information, receive a request for shot information triggered from the wireless

5  beacon; transmit the request to a processor; receive shot information from the processor; encode the

6  shot information as an audio file; and if the earpiece is in an inactive state, wirelessly transmit the

7  audio file to the speaker device for audio playback; if the earpiece is in an active state and a user-

8  selected public state, wirelessly transmit the audio file to the speaker device for audio playback; if

9  the earpiece is in an active state and a user-selected private state, wirelessly transmit the audio file to

10  an audio output on the earpiece for audio playback; and if the earpiece is in an active state and a user-

11  selected silent state, blocking transmission of the audio file.

12       70.    Claim 17 of the '477 Patent reads as follows:  17.  A method of determining shot

13  information comprising:  providing a controller and a non-transitory, computer-readable storage

14  medium in operable communication with the controller; providing a wireless beacon comprising an

15  earpiece, a sensor and a GPS-enabled location service; determining by the controller, the operational

16  state of the earpiece, based at least in part on sensor information and user input; if the earpiece is in

17  an active state based on sensor information, receiving a request for shot information from the wireless

18  beacon; transmitting the request to a processor; receiving shot information from the processor;

19  encoding the shot information as an audio file; if the earpiece is in an inactive state, wirelessly

20  transmitting the audio file to a speaker device for audio playback; if the earpiece is in an active state

21  and a user-selected public state, wirelessly transmitting the audio file to the speaker device for audio

22  playback; if the earpiece is in an active state and a user-selected private state, wirelessly transmitting

23  the audio file to an audio output on the earpiece and if the earpiece is in an active state and a user-

24  selected silent state, blocking transmission of the audio file.

25       71.    All of the remaining claims of the '477 Patent (claims 2-16) also recite elements of

26  iGolf Intellectual Property and Brian Verdugo's contributions to the conception of the invention as

27  claimed because these remaining claims depend from (and therefore incorporate all of the limitations

28  of) independent claim 1.

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

13

PLAINTIFF IGOLF, INC.'S COMPLAINT FOR DAMAGES

**FIRST CLAIM FOR RELIEF**

**(For Breach of Contract)**

**(Against Defendants BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF, VISTA OUTDOORS, INC., and DOES 1-25, inclusive )**

72.     iGolf re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein, to the extent the allegations are not inconsistent with this claim for relief.

73.     iGolf entered into written and/or implied contract(s) with Bushnell, Vista and/or DOES 1-25, and each of them, herein.

74.     Specifically, and as detailed above, in or around December 2011, iGolf entered into a written contract with Bushnell, Vista and/or DOES 1-25, and each of them. This contract was extended in 2013 and remained in effect at all times between its commencement and December 31, 2017. In February 2018, iGolf and Bushnell, Vista and/or DOES 1-25, and each of them, extended the contract until February 1, 2021. The contract expired as of February 1, 2021, but was ultimately renewed in April 2021, with the term being extended until February 28, 2022. The contract was not renewed following February 28, 2022.

75.     At all times that the contract(s) with Bushnell, Vista and/or DOES 1-25, and each of them, were in effect, iGolf fully performed all conditions, covenants, and promises required on its part to be performed in accordance with such written and/or implied contracts, except for those prevented and/or excused by Bushnell, Vista and/or DOES 1-25, and each of them.

76.     By entering into such written and/or implied contracts, Bushnell, Vista and/or DOES 1-25, and each of them, agreed to abide by the terms of the same. However, Bushnell, Vista and/or DOES 1-25, and each of them, failed to do so, thereby breaching the written and/or implied contracts entered into with iGolf.

77.     Specifically, Bushnell, Vista and/or DOES 1-25, and each of them, claimed ownership of iGolf Intellectual Property in patent applications, in direct violation of several sections of the relevant contract(s). Further, Bushnell, Vista and/or DOES 1-25, and each of them, publicly disclosed iGolf confidential information and proprietary iGolf Intellectual Property in patent applications.

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

14

PLAINTIFF IGOLF, INC.'S COMPLAINT FOR DAMAGES

78.     Further, Bushnell, Vista and/or DOES 1-25, and each of them, engaged in a working relationship with a competitor of iGolf while under contract with Bushnell, Vista and/or DOES 1-25, and each of them, and developed products that were contemplated and exclusive to the contract without providing iGolf with a right of first refusal.

79.     Additionally, Bushnell, Vista and/or DOES 1-25, and each of them, continued to sell iGolf GPS Devices covered by the relevant contract(s) without a license and without iGolf authorization in periods of time where the contract(s) were not in effect, specifically between February 1, 2021 and April 2021, and March 2022 and October 2022. During these periods of unauthorized sales, Bushnell, Vista and/or DOES 1-25, and each of them, failed to provide payment in full to iGolf for Bushnell branded iGolf GPS Devices sold which use iGolf GPS Data pursuant to the contract and for which iGolf was entitled to payment.

80.     As a direct and proximate result of Bushnell, Vista and DOES 1-25, and each of their breach(es), iGolf has been and continues to suffer harm and/or damages.

81.     Bushnell, Vista and/or DOES 1-25, and each of their breach(es) of contract(s) were a substantial factor in causing iGolf's harm and/or damages.

## SECOND CLAIM FOR RELIEF

### (For Breach of Implied Covenant of Good Faith and Fair Dealing)

### (Against Defendants BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF, VISTA OUTDOORS, INC., and DOES 1-25, inclusive )

82.     iGolf re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein, to the extent the allegations are not inconsistent with this claim for relief.

83.     iGolf entered into written and/or implied contract(s) with Bushnell, Vista and/or DOES 1-25, and each of them, herein. Inherent in the written and/or implied contract(s) is an implied promise of good faith and fair dealing, including that Bushnell, Vista and/or DOES 1-25, and each of them, not do anything to unfairly interfere with the right of iGolf to receive the benefits of the contract. Good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another. Generally speaking, it means being faithful to one's duty or obligation.

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

However, Bushnell, Vista and/or DOES 1-25, and each of them, violated the duty to act fairly and in good faith.

84.     iGolf performed all of the significant things that the contract required iGolf to do, and/or iGolf was excused from having to do those things required by the contract(s). All conditions required for Bushnell, Vista and/or DOES 1-25, and each of their performance occurred or were excused.

85.     Bushnell, Vista and/or DOES 1-25, and each of them, prevented iGolf from receiving the benefits under the contract(s).

86.     Bushnell, Vista and/or DOES 1-25, and each of them, claimed ownership of iGolf Intellectual Property in patent applications, in direct violation of several sections of the relevant contract(s). Further, Bushnell, Vista and/or DOES 1-25, and each of them, publicly disclosed iGolf confidential information and proprietary iGolf Intellectual Property in patent applications.

87.     Bushnell, Vista and/or DOES 1-25, and each of them, engaged in a working relationship with a competitor of iGolf while under contract with iGolf, and developed products that were contemplated and exclusive to the contract without providing iGolf with a right of first refusal.

88.     On information and belief, Bushnell, Vista and/or DOES 1-25, and each of them, utilized and shared confidential iGolf Intellectual Property without iGolf's permission, and reverse-engineered iGolf Intellectual Property to be incorporated and used in developing products with iGolf's competitor.

89.     Additionally, Bushnell, Vista and/or DOES 1-25, and each of them, continued to sell iGolf Intellectual Property covered by the relevant contract(s) without a license and without iGolf's authorization in periods of time where the contract(s) were not in effect, specifically between February 1, 2021 and April 2021, and March 2022 and October 2022. During these periods of unauthorized sales, Bushnell, Vista and/or DOES 1-25, and each of them, failed to provide payments to iGolf for products covered by the contract and for which iGolf was entitled to payment.

90.     By doing so, Bushnell, Vista and/or DOES 1-25, and each of them, did not act fairly or in good faith.

///

PLAINTIFF IGOLF, INC.'S COMPLAINT FOR DAMAGES

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

1    91.    As a direct and proximate result of Bushnell, Vista and/or DOES 1-25, and each of

2    their conduct, iGolf has been and continues to suffer harm and/or damages.

3    **THIRD CLAIM FOR RELIEF**

4    **(For Misappropriation of Trade Secrets)**

5    **(Against Defendants BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF, VISTA**

6    **OUTDOORS, INC., and DOES 1-25, inclusive )**

7    92.    iGolf re-alleges and incorporates herein by reference each and every allegation

8    contained in the preceding paragraphs of this Complaint as though fully set forth herein, to the extent

9    the allegations are not inconsistent with this claim for relief.

10    93.    Bushnell, Vista and/or DOES 1-25, and each of them, misappropriated a trade secret

11    related to iGolf Intellectual Property.

12    94.    At all times relevant herein, iGolf was the owner of proprietary information related to

13    iGolf GPS Data, iGolf Data Distribution and iGolf GPS Devices.

14    95.    iGolf Intellectual Property was a trade secret at the time of Bushnell, Vista and/or

15    DOES 1-25, and each of their misappropriation. iGolf Intellectual Property was explicitly listed as

16    confidential pursuant to the contract(s) between iGolf and Bushnell, Vista and/or DOES 1-25, and

17    each of them, and was subject to the confidentiality clause as set forth therein.

18    96.    Despite the confidential and trade secret nature of iGolf Intellectual Property,

19    Bushnell, Vista and/or DOES 1-25, and each of them, improperly used and/or disclosed iGolf

20    Intellectual Property, confidential information and/or trade secrets. iGolf developed the process for

21    how the Bushnell speaker functions and the process which Bushnell claims in its patent application.

22    97.    Bushnell, Vista and/or DOES 1-25, and each of them, claimed ownership of iGolf

23    Intellectual Property in patent applications, in direct violation of several sections of the relevant

24    contract(s). Further, Bushnell, Vista and/or DOES 1-25, and each of them, publicly disclosed iGolf's

25    confidential information and proprietary iGolf Intellectual Property in patent applications.

26    98.    Bushnell, Vista and/or DOES 1-25, and each of them, engaged in a working

27    relationship with a competitor of iGolf while under contract with iGolf, and developed products that

28    were contemplated and exclusive to the contract without providing iGolf with a right of first refusal.

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

17
PLAINTIFF IGOLF, INC.'S COMPLAINT FOR DAMAGES

99.     On information and belief, Bushnell, Vista and/or DOES 1-25, and each of them, utilized and shared confidential iGolf Intellectual Property without iGolf permission, and reverse-engineered iGolf Intellectual Property to be incorporated and used in developing products with iGolf's competitor.

100.     As a direct and proximate result of Bushnell, Vista and/or DOES 1-25, and each of their misappropriation of trade secrets, iGolf has been and continues to suffer harm and/or damages, and/or Bushnell, Vista and/or DOES 1-25, and each of them, was unjustly enriched.

101.     Bushnell, Vista and/or DOES 1-25, and each of their use and/or disclosure of iGolf Intellectual Property, confidential information and/or trade secrets is a substantial factor in causing iGolf's harm and/or damages, and/or resulted in Bushnell, Vista and/or DOES 1-25, and each of them, becoming unjustly enriched.

102.     Bushnell, Vista and/or DOES 1-25, and each of their misappropriation of iGolf's trade secrets was conducted maliciously and in willful disregard of iGolf's rights, thus entitling iGolf to an award of exemplary damages and reasonable attorney's fees and costs pursuant to Civil Code sections 3426.3, subdivision (c) and 3426.4.

### FOURTH CLAIM FOR RELIEF

### (For Intentional Interference with Prospective Economic Relations)

### (Against Defendants BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF, VISTA OUTDOORS, INC., and DOES 1-25, inclusive )

103.     iGolf re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein, to the extent the allegations are not inconsistent with this claim for relief.

104.     Bushnell, Vista and/or DOES 1-25, and each of them, intentionally interfered with an economic relationship between iGolf and Taylor Made, which would have resulted in an economic benefit to iGolf.

105.     At all times relevant hereto, iGolf had a prospective business and/or economic relationship with Taylor Made, which would have resulted in an economic benefit to iGolf.

///

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

18

PLAINTIFF IGOLF, INC.'S COMPLAINT FOR DAMAGES

106.    At all times relevant hereto, iGolf expended considerable time, effort and money developing the business relationship with Taylor Made, which would have likely resulted in an economic benefit to iGolf.

107.    Bushnell, Vista and/or DOES 1-25, and each of them, knew of iGolf's relationship with Taylor Made, and iGolf is informed and believes, and thereon alleges that Bushnell, Vista and/or DOES 1-25, and each of them, intended to disrupt the relationship between iGolf and Taylor Made.

108.    iGolf Intellectual Property was a trade secret and explicitly listed as confidential pursuant to the contract(s) between iGolf and Bushnell, Vista and/or DOES 1-25, and each of them.

109.    Despite the confidential and trade secret nature of iGolf Intellectual Property, Bushnell, Vista and/or DOES 1-25, and each of them, improperly used and/or disclosed iGolf Intellectual Property, confidential information and/or trade secrets.

110.    Bushnell, Vista and/or DOES 1-25, and each of them, claimed ownership of iGolf Intellectual Property in patent applications, in direct violation of several sections of the relevant contract(s). Further, Bushnell, Vista and/or DOES 1-25, and each of them, publicly disclosed iGolf's confidential information and proprietary iGolf Intellectual Property in patent applications.

111.    By engaging in this conduct, Bushnell, Vista and/or DOES 1-25, and each of them, intended to disrupt iGolf's relationship with Taylor Made and/or knew that disruption of the relationship was substantially certain to occur.

112.    iGolf's relationship with Taylor Made was disrupted, as Taylor Made declined to move forward with the Taylor Made Deal due to concerns and legal hurdles surrounding patents as a direct and proximate result of Bushnell, Vista and/or DOES 1-25, and each of their interference and/or conduct.

113.    iGolf has been and continues to suffer harm and/or damages as a direct result of the loss of this relationship with Taylor Made.

114.    Bushnell, Vista and/or DOES 1-25, and each of their interference and/or conduct is and was a substantial factor in causing iGolf's harm and/or damages.

115.    Bushnell, Vista and/or DOES 1-25, and each of their actions as described herein were made with the specific intent of disrupting iGolf's relationship with Taylor Made, to obtain business

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

and profits for their own benefit, and were taken maliciously, oppressively, and in conscious disregard for iGolf's rights, entitling iGolf to an award of exemplary damages against Bushnell, Vista and/or DOES 1-25, and each of them, to punish and deter Bushnell, Vista and/or DOES 1-25, and each of them, from engaging in any such future conduct.

**FIFTH CLAIM FOR RELIEF**

**(For Negligent Interference with Prospective Economic Relations)**

**(Against Defendants BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF, VISTA OUTDOORS, INC., and DOES 1-25, inclusive )**

116. iGolf re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein, to the extent the allegations are not inconsistent with this claim for relief.

117. Bushnell, Vista and/or DOES 1-25, and each of them, negligently interfered with a relationship between iGolf and Taylor Made, which would have resulted in an economic benefit to iGolf.

118. At all times relevant hereto, iGolf had a prospective business and/or economic relationship with Taylor Made, which would have resulted in an economic benefit to iGolf.

119. At all times relevant hereto, iGolf expended considerable time, effort and money developing the business relationship with Taylor Made, which would have likely resulted in an economic benefit to iGolf.

120. Bushnell, Vista and/or DOES 1-25, and each of them, knew or should have known of iGolf's relationship with Taylor Made, and iGolf is informed and believes, and thereon alleges that Bushnell, Vista and/or DOES 1-25, and each of them, knew or should have known that iGolf's relationship with Taylor Made would be disrupted if Bushnell, Vista and/or DOES 1-25, and each of them, failed to act with reasonable care.

121. Bushnell, Vista and/or DOES 1-25, and each of them, failed to act with reasonable care by engaging in wrongful conduct, including, but not limited to, improperly using and/or disclosing iGolf Intellectual Property, confidential information and/or trade secrets.

///

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

122.   iGolf Intellectual Property was a trade secret and explicitly listed as confidential pursuant to the contract(s) between iGolf and Bushnell, Vista and/or DOES 1-25, and each of them.

123.   Despite the confidential and trade secret nature of iGolf Intellectual Property, Bushnell, Vista and/or DOES 1-25, and each of them, improperly used and/or disclosed iGolf Intellectual Property, confidential information and/or trade secrets.

124.   Bushnell, Vista and/or DOES 1-25, and each of them, claimed ownership of iGolf Intellectual Property in patent applications, in direct violation of several sections of the relevant contract(s). Further, Bushnell, Vista and/or DOES 1-25, and each of them, publicly disclosed iGolf's confidential information, trade secrets and proprietary Intellectual Property in patent applications.

125.   iGolf's relationship with Taylor Made was disrupted, as Taylor Made declined to move forward with the Taylor Made Deal due to concerns and legal hurdles surrounding patents as a direct and proximate result of Bushnell, Vista and/or DOES 1-25, and each of their negligent and/or wrongful conduct that resulted in the interference.

126.   iGolf has been and continues to suffer harm and/or damages as a direct result of the loss of this relationship with Taylor Made.

127.   Bushnell, Vista and/or DOES 1-25, and each of their interference and/or negligent and/or wrongful conduct is and was a substantial factor in causing iGolf's harm and/or damages.

**SIXTH CLAIM FOR RELIEF**

**(For Unfair Competition in Violation of Business and Professions Code § 17200, _et. seq._)**

**(Against Defendants BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF, VISTA OUTDOORS, INC., and DOES 1-25, inclusive )**

128.   iGolf re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein, to the extent the allegations are not inconsistent with this claim for reliefclaim for relief.

129.   In the alternative, and to the extent that there is a determination that there is no protectable trade secret, iGolf is informed and believed and thereon alleges that Bushnell, Vista and/or DOES 1-25, and each of them, violated Business and Professions Code section 17200, _et seq._,

PLAINTIFF IGOLF, INC.'S COMPLAINT FOR DAMAGES

which prohibits any unlawful, unfair or fraudulent business act or practice ("Unfair Competition Law" and/or "UCL").

130.    Bushnell, Vista and/or DOES 1-25, and each of them, violated the UCL by engaging in unlawful, unfair and/or fraudulent business acts and/or practices, as set forth and alleged herein.

131.    Bushnell, Vista and/or DOES 1-25, and each of them, breached the relevant contract(s) between iGolf and Bushnell, Vista and/or DOES 1-25, and each of them, as set forth and alleged herein.

132.    Bushnell, Vista and/or DOES 1-25, and each of them, breached the implied covenant of good faith and fair dealing subject to the relationship between iGolf and Bushnell, Vista and/or DOES 1-25, and each of them, as set forth and alleged herein.

133.    Bushnell, Vista and/or DOES 1-25, and each of them, intentionally and/or negligent interfered with a prospective business and/or economic relationship, as set forth and alleged herein.

134.    iGolf is informed and believes, and thereon alleges that the conduct of Bushnell, Vista and/or DOES 1-25, and each of them, as described herein, constitutes an unfair and/or fraudulent business practices within the meaning of Business and Professions Code section 17200, *et seq.*

135.    iGolf is further informed and believes, and thereon alleges that Bushnell, Vista and/or DOES 1-25, and each of them, engaged in their unfair and fraudulent business practices, as described herein, with the specific intent to injure and/or cause damage to iGolf.

136.    Bushnell, Vista and/or DOES 1-25, and each of their business acts and practices with respect to iGolf, as set forth herein, are unlawful, unfair and fraudulent in violation of the UCL.

137.    iGolf seeks restitution of any monies received by Bushnell, Vista and/or DOES 1-25, and each of them, and/or disgorgement of profits as a result of their unfair business practices and injunctive relief.

///

///

///

///

///

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

22
PLAINTIFF IGOLF, INC.'S COMPLAINT FOR DAMAGES

**SEVENTH CLAIM FOR RELIEF**

**(For Intentional Misrepresentation)**

**(Against Defendants BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF, VISTA OUTDOORS, INC., and DOES 1-25, inclusive)**

138.    iGolf re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein, to the extent the allegations are not inconsistent with this claim for relief.

139.    Bushnell, Vista and/or DOES 1-25, and each of them, represented facts to iGolf that were not true, as set forth herein, and including, but not limited to, that they would comply with the express terms of the contracts, that they would not share or disclose iGolf's confidential, proprietary information and trade secrets, that they would pay iGolf pursuant to the contracts, that they would provide first right of refusal to iGolf, and that any patents they would apply for would be limited in nature to the terms agreed upon by iGolf.

140.    Bushnell, Vista and/or DOES 1-25, and each of them, made these representations intentionally, recklessly, and/or without regard for their truth.

141.    Bushnell, Vista and/or DOES 1-25, and each of them, intended that iGolf rely on their representations.

142.    iGolf reasonably relied on Bushnell, Vista and/or DOES 1-25, and each of their representations, and shared confidential, proprietary information and trade secrets, entered into contracts, continued to provide goods and services, agreed to a limited ornamental design patent application, and abided by the terms of the contracts.

143.    iGolf's reliance on Bushnell, Vista and/or DOES 1-25, and each of their representations was a substantial factor in causing iGolf's harm.

144.    Bushnell, Vista and/or DOES 1-25, and each of their wrongful acts, as described and alleged herein, were malicious, oppressive, intended to defraud, and in conscious disregard of iGolf's rights, thus entitling iGolf to punitive damages.

145.    As a result, iGolf has been damaged in an amount to be proven at trial.

///

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

## EIGHTH CLAIM FOR RELIEF

### (For Express Indemnity)

**(Against Defendants BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF, VISTA OUTDOORS, INC., and DOES 1-25, inclusive )**

146.    iGolf re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein, to the extent the allegations are not inconsistent with this claim for relief.

147.    Bushnell, Vista and/or DOES 1-25, and each of them, entered into written and/or implied contracts with iGolf herein. Express in each contract was a promise on the part of Bushnell, Vista and/or DOES 1-25, and each of them, to indemnify and hold harmless iGolf.

148.    iGolf is informed and believes and thereon alleges that if X18 was damaged, as alleged in the X18 Action, that said damage was directly and proximately caused and contributed to by the negligence and/or faults, or other actionable conduct, of Bushnell, Vista and/or DOES 1-25, and each of them.

149.    iGolf is informed and believes and thereon alleges that any and all claims, liabilities, obligations or causes of action set forth in, and arising out of the X18 Action, are within the scope of the express indemnity provisions of the contracts mentioned herein above.

150.    On March 1, 2021, iGolf tendered the defense and indemnity of the X18 Action filed against iGolf to Bushnell, Vista and/or DOES 1-25, and each of them.

151.    On March 29, 2021, Bushnell, Vista and/or DOES 1-25, and each of them, denied iGolf's tender of defense and indemnity in relation to the X18 Action.

152.    iGolf has incurred, and continues to incur, attorney's fees and costs in defense of and in relation to the X18 Action.

///
///
///
///
///

PLAINTIFF IGOLF, INC.'S COMPLAINT FOR DAMAGES

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

**NINTH CLAIM FOR RELIEF**

**(For Declaratory Relief)**

**(Against Defendants BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF, VISTA OUTDOORS, INC., and DOES 1-25, inclusive )**

153.    iGolf re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein, to the extent the allegations are not inconsistent with this claim for relief.

154.    In the event that X18 is successful in obtaining a judgment against iGolf, or in the event that iGolf settles with X18, iGolf alleges that any damages suffered by X18 was contributed to by the negligence or fault of Bushnell, Vista and/or DOES 1-25, and each of them, and that Bushnell, Vista and/or DOES 1-25, and each of them, did so negligently perform their duties and functions with respect to the causes of action referenced in X18's complaint, as to proximately cause the damages alleged in X18's complaint, if any.

155.    iGolf has been compelled to hire attorneys and incur attorneys' fees, investigative, court and other costs in order to protect itself in the X18 Action, and has therefore been damaged as a result of the breach of Bushnell, Vista and/or DOES 1-25, and each of them, of their respective obligations in an amount presently unascertained, but which consists of attorneys' fees, investigative costs and expenses, and other costs and expenses incurred and to be incurred, and any claims, liabilities or obligations which iGolf may be compelled to render or respond to as a result of the X18 Action and/or any other complaints herein.

156.    An actual controversy now exists between iGolf and Bushnell, Vista and/or DOES 1-25, and each of them, as to the rights of indemnity owing to iGolf by Bushnell, Vista and/or DOES 1-25, and each of them, in that iGolf contends that indemnity obligations exist which Bushnell, Vista and/or DOES 1-25, and each of them, have failed to acknowledge.

157.    An actual controversy exists between iGolf and Bushnell, Vista and/or DOES 1-25, and each of them, as follows: iGolf contends that between itself and Bushnell, Vista and/or DOES 1-25, and each of them, iGolf's responsibility, if any, for the damages alleged by X18 rests primarily and ultimately upon Bushnell, Vista and/or DOES 1-25, and each of them,. In the alternative, iGolf

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

1 contends that the alleged injuries and damages suffered by X18 were contributed to by the

2 negligence, carelessness, or other tortious conduct by Bushnell, Vista and/or DOES 1-25, and each

3 of them.

4        158.    iGolf desires a judicial determination of its rights, duties, and obligations with respect

5 to the claims of Bushnell, Vista and/or DOES 1-25, and each of them.

6        159.    Such a determination is necessary and proper at this time in order that iGolf may

7 ascertain its rights and duties with respect to the claims of Bushnell, Vista and/or DOES 1-25, and

8 each of them.

9                        **TENTH CLAIM FOR RELIEF**

10                       **(For Correction of Inventorship)**

11 **(Against Defendants BUSHNELL HOLDINGS, INC., dba BUSHNELL GOLF, and DOES 1-**

12                              **25, inclusive)**

13       160.    iGolf re-alleges and incorporates herein by reference each and every allegation

14 contained in the preceding paragraphs of this Complaint as though fully set forth herein, to the

15 extent the allegations are not inconsistent with this claim for relief.

16       161.    The '240 Patent, the '141 Patent and the '477 Patent all claim one or more elements

17 of iGolf Intellectual Property within the issued claims.

18       162.    The '240 Patent, the '141 Patent and the '477 Patent claims subject matter covered

19 under the 2011 License Agreement.

20       163.    Brian Verdugo is at least a co-inventor of one or more claims in the '240 Patent, the

21 '141 Patent and the '477 Patent.

22       164.    The '240 Patent, the '141 Patent and the '477 Patent erroneously omits Brian

23 Verdugo as an inventor.

24       165.    The '381 Application (claiming priority to the '240 Patent), the '696 Application

25 and the '207 Application (each claiming priority to the '141 Patent) all suffer from the same

26 inventorship defects described above, since all of these Applications are pending, claim priority to

27 the same issued patents without naming Brian Verdugo as an inventor and have pending claims

28 listing one or more elements of iGolf Intellectual Property.

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

26
PLAINTIFF IGOLF, INC.'S COMPLAINT FOR DAMAGES

166.    Pursuant to 35 USC § 256 and 28 USC §2201, iGolf seeks an order from this Court directing the USPTO and its Director to correct the inventorship of the '240 Patent, the '141 Patent and the '477 Patent (as well as the inventorship of the pending child applications, namely, the '381 Application, the '696 Application and the '207 Application) to properly name Brian Verdugo as an inventor.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff IGOLF TECHNOLOGIES, INC., prays for judgment as follows:

1.    On iGolf's First, Second, and Fifth Claims for Relief:

    (a)    For iGolf's damages according to proof;

2.    On iGolf's Third Claim for Relief:

    (a)    For an injunction prohibiting Bushnell from selling existing and future products that utilize any of the iGolf Intellectual Property;

    (b)    For iGolf's damages according to proof; and

    (c)    For an award of punitive damages.

3.    On iGolf's Fourth and Seventh Claims For Relief:

    (a)    For iGolf's damages according to proof; and

    (b)    For an award of punitive damages.

4.    On iGolf's Sixth Claim For Relief:

    (a)    For restitution of any monies received by Bushnell, Vista and/or DOES 1-25, and each of them,

    (b)    For a disgorgement of profits as a result of their unfair business practices; and

    (c)    For injunctive relief;

5.    On iGolf's Eighth Claim For Relief:

    (a)    For an order requiring Bushnell, Vista and/or DOES 1-25 to defend and indemnify iGolf for the attorneys' fees, investigative costs and expenses, and other costs and expenses incurred and to be incurred, and any claims, liabilities or obligations which iGolf may be compelled to render or respond to as a result of the X18 Action and/or any other complaints herein.

///

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

PLAINTIFF IGOLF, INC.'S COMPLAINT FOR DAMAGES

6.      On iGolf's Ninth Claim For Relief:

(a)      For an order requiring Bushnell, Vista, and/or DOES 1-25 to reimburse iGolf for the attorneys' fees, investigative costs and expenses, and other costs and expenses incurred and to be incurred, and any claims, liabilities or obligations which iGolf may be compelled to render or respond to as a result of the X18 Action and/or any other complaints herein.

7.      On iGolf's Tenth Claim For Relief:

(a)      An order requiring Bushnell to disclose to iGolf all pending patent applications or other issued patents, both foreign and domestic, that disclose or claim iGolf Intellectual Property;

(b)      An order directing the USPTO to correct the inventorship of the '240 Patent, the '141 Patent and the '477 Patent by adding Brian Verdugo, as well as removing any currently named inventor who is found not to have made an inventive contribution.

(c)      An order requiring Bushnell to take all steps necessary to correct inventorship of the '381 Application, the '696 Application and the '207 Application to add Brian Verdugo and remove any currently named inventor who is found not to have made an inventive contribution; and

(d)      An order finding that this is an exceptional case, and pursuant to 35 U.S.C. § 285, awarding iGolf its atttorneys' fees and non-taxable costs.

8.      On all of iGolf's Claims for Relief:

(a)      For a judgment in favor of iGolf and against Bushnell, Vista and/or DOES 1-25;

(b)      For iGolf's costs of suit herein incurred;

(c)      For iGolf's reasonable attorney's fees incurred herein as provided for by law or contract;

(d)      For an award of prejudgment interest; and

(e)      For such other and further relief as the Court may deem just, equitable and proper.

///

///

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

PLAINTIFF IGOLF, INC.'S COMPLAINT FOR DAMAGES

**DEMAND FOR JURY TRIAL**

iGolf hereby demands a jury trial on its First, Second, Third, Fourth, Fifth, Seventh, and Eighth claims for relief.

Dated: July 15, 2024                               BORDIN SEMMER LLP

                                        By: _____
                                            Joshua Bordin-Wosk
                                            Andrei V. Serpik
                                            Attorneys for Plaintiff,
                                            iGolf, Inc.

BORDIN SEMMER LLP
6100 CENTER DRIVE
SUITE 1100
LOS ANGELES, CA 90045
(323) 457-2110

## <u>PROOF OF SERVICE</u>

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 6100 Center Drive, Suite 1100, Los Angeles, California 90045.

     On July 15, 2024, I served the within document(s) described as:

**PLAINTIFF IGOLF, INC.'S FIRST AMENDED COMPLAINT**

on the interested parties in this action as stated on the attached mailing list.

[X]   (BY ELECTRONIC MAIL/ECF) I caused such document to be electronically transmitted via United States District Court, Southern District of California, which is then printed and maintained with the original documents in our office.

     Executed on July 15, 2024, at Los Angeles, California.

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____       _____
         Cindy Cardoso

1

**IGolf, Inc. v. Bushnell Holdings, Inc., et al.**
**Case No. 3:23-cv-01595-L-BGS**

**CLIENT:    IGOLF, INC.**
**FILE NO.:  4519.003**

**SERVICE LIST**

| | |
|---|---|
| Carla M. Wirtschafter<br>REED SMITH LLP<br>1901 Avenue of the Stars, Suite 700<br>Los Angeles, CA 90067<br><br>Tel: (213) 734-5200<br>Fax: (213) 734-5299<br>Email: cwirtschafter@reedsmith.com;<br>ksangdahl@reedsmith.com;<br>wweltman@reedsmith.com;<br>CHyun@reedsmith.com;<br>ATurner@reedsmith.com;<br><br>*Attorneys for Defendants,*<br>*BUSHNELL HOLDINGS, INC., DBA*<br>*BUSHNELL GOLF AND VISTA OUTDOOR,*<br>*INC.* | |

2